## DENNIS DONOVAN
### v.
## JAMES FINN, DENNIS MC CARTHY, MATTHEW CARROLL, and ROBERT EMMET.

D. recovered a judgment at law against J. F., on which a fi. fa. was issued, and returned nulla bona.

Robert F. deceased, had left legacies to J. F. and died leaving goods, &c. more than sufficient to pay debts and legacies ; but the legacies to J. F. were not yet paid.   A bill in equity does not lie for D. against J. F. and the executors of Robert F. to have his judgment satisfied out of the legacies to J. F.

Where the subject of a suit, is exclusively legal, equity has no jurisdiction to enforce, or to give a better remedy.

There must be some foundation for equitable interference, such as trust, fraud, &c.

THIS cause was heard much at large upon the pleadings and proofs, and several questions were raised and discussed, which being either mixed questions of fact and law, or becoming immaterial in consequence of the point upon which the decision eventually turned, we do not report.   The pleadings and testimony, so far only as they relate to the question finally decided, were to the following effect :

*1823.*
*October 28.*
*Nov. 8, 10, 11.*

*Jurisdiction in aid of execution at law.*

The bill stated that the complainant recovered a judgment in the supreme court, of August term 1822, against the de-

fendant James Finn, for three hundred seventy seven dollars sixty six cents damages and costs in a plea of covenant; that the record was filed on the ninth day of August, and on the same day a writ of fi. fa. was issued and delivered to the sheriff of the city and county of New-York, where the venue was laid, and where the said defendant resided.

That the fi. fa. was returnable on the twelfth day of August aforesaid, and was afterwards returned by the said sheriff nulla bona. That the judgment was for a just debt, and that James Finn has no goods or visible property, except as after mentioned. It then stated, that one Robert Finn, brother of James Finn, by his will bearing date the twenty fourth of August 1819, gave and bequeathed to the said James Finn, various sums of money, and among others one thousand five hundred dollars, secured by a certain promissory note mentioned in the bill, and one thousand dollars secured by another promissory note also set forth in the bill; and he also gave and bequeathed to the said James Finn, two fifth parts of the sum of ten thousand dollars in the six per cent. stock of the United States; and he appointed the defendants, Dennis Mc Carthy, Matthew Carroll, and Robert Emmet, executors thereof. That the testator departed this life soon after making his will, leaving the same in full force and effect; and the said executors have possessed themselves of his personal estate, consisting of the notes, stock, and other securities mentioned in the will, or the proceeds thereof; and that the legacies and proportions of the said personal estate so given and bequeathed to the said James Finn, and remaining in the hands of the executors, were more than sufficient to satisfy the complainant's demand. That the complainant had frequently applied to Finn for an order from him upon the executors for the amount of his demand, but he has refused to give such order.

The bill then prayed that an account may be taken of the personal estate, and of the debts and credits of the said Robert Finn, the testator, and that the complainant may be paid his debt and costs by the executors, out of the proportion of James Finn, of the testator's estate; and that until such account and payment, the executors and James Finn might be restrained

by injunction from paying or assigning over, or accounting to any person whomsoever, for so much of the said personal estate as might be necessary to pay the complainant's demand with interest and costs of suit, and for further relief, &c.

The defendants Dennis Mc Carthy, Matthew Carroll, and Robert Emmet, by their answer, admitted the will; that they were appointed executors, and that the testator died, leaving the same in full force and effect; that they became qualified as such executors; that the personal estate of the testator consists principally of United States' and of bank stock; and that of the moneys mentioned in the bill and bequeathed to James Finn, there was more than sufficient to pay the complainant's judgment in their hands; but they cannot admit that James Finn is absolutely entitled thereto, or that the money or property in their hands is free and discharged from all debts due by the estate, for reasons which they set forth. James Finn, in his answer, admitted the complainant's judgment to have been recovered and docketted as alleged in the bill, but insisted that it was recovered wrongfully, and said that he did not know of the fi. fa. having been issued, and alleged that if the sheriff had called at his house, he would have found property liable to be levied upon.

He denied that the sum of three hundred and seventy-seven dollars sixty-six cents is due from him to the complainant.

By his amended answer, he admitted that his proportion of his brother Robert's estate is more than sufficient to pay the complainant's judgment.

The solicitor for Mr. Finn has subsequently admitted the fi. fa. and return thereto, as stated in the complainant's bill.

So far as the present report is concerned, the point made by the counsel for the complainant was, " that the complain- " ant, having exhausted his legal remedy on the said judg- " ment by issuing an execution thereon, to which nulla bona " had been returned, is entitled to the aid of this court to " enable him to get at the property of the defendant, which " is beyond the reach of an execution at law."

When the cause was first opened, this point was less fully examined by counsel than the chancellor wished, and he

therefore desired them to discuss it on some future day in term ; accordingly it now came on for argument.

MESSRS. GRIFFIN and COWDREY, for the complainant. Equity will universally aid a judgment and execution at law. This aid is not confined to cases of fraud, but extends to all cases where the defendant at law is possessed of property which the common law, from the peculiar form of its process, cannot reach, but which the defendant in good conscience ought to apply to the payment of his debt. Of consequence, it reaches choses in action, trusts, and money, in the public stocks. This is the true principle of the case of Hadden v. Spader in the court of errors, which extends to and embraces all these cases. 20 John. 554. In that case, the special recital introduced into the order of affirmance, confines the opinion of the court of errors to the reasons expressed by Mr. justice Woodworth, in which all the judges concurred. It is in that opinion, therefore, that we are to seek for the rule and the reason of the case. In that case, Mr. justice Woodworth put the decision broadly upon the principle of a trust. "If, says he, p. 569. I have rightly understood the former " cases, it does not appear to be indispensably necessary that " the property might be taken on execution ; but the broad " principle is supported, that stock may be reached in equity, " when the plaintiff has pursued his remedy as far as he can." And again : " If property not tangible by an execution, is " placed in the hands of a trustee, is there any hardship in " requiring him to pay over to a creditor, instead of the cestui " que trust ?" " If the property sought to be reached, con- " sist of stock, cannot the court direct a transfer and sale for " the benefit of creditors ?" But if any doubt should exist as to the extent of the principle decided in Hadden v. Spader, the English cases, previous to our revolution, have sufficiently decided the point now in debate, though we may admit, that since 1790, the courts of England seem to have acted upon a different principle. In Taylor v. Jones, 2 Atk. 600. In the year 1743, Sir John Fortescue, master of the rolls, in favour of creditors, extended the decree of the court to stocks which the defendant had purchased for the use of his family. So King v. Dupin, 2 Atk. 603. n. 2. was a case in which

*Margin:* 1823. DONOVAN v. FINN. Nov. 8.

there was no pretence of fraud, and in which lord Hardwicke reached stocks which the defendant had conveyed in trust. In Horn v. Horn, Amb. 79. his opinion was to the same effect, though the relief was refused for another reason : and lord Northington decreed to the same effect in Partridge v. Gopp, Amb. 596. and Eden's rep. 163. So in Luckner v. Freeman, Prec. in ch. 105. a judgment creditor was let in to be satisfied out of a residuary trust, after payment of debts entitled to a preference. All these are cases previous to our revolution. Before that period, there are no cases to the contrary ; or if any, they do not go upon the distinction whether fraudulent or not.

In Dundas v. Dutens, 1 Ves. jun. 196. lord Thurlow's difficulty was, whether he had power to reach stocks. And in all the cases in England, the doubts that have arisen have been upon the nature of the property, not upon the point of fraud. So in Atherly on Marriage Settlements, 220,—221. it is said that stocks cannot be reached even in case of fraud. To the same effect is 8 East, 425. and 5 D. and E. 420. So that in England, the weight of authority on the opposite sides of the main question here seems nearly balanced.

But whatever may be the law in England, the decisions of our own courts leave little to desire upon this question. In Bayard v. Hoffman, 4 John. ch. 450. the late chancellor Kent subjected stocks to the operation of a bona fide assignment for creditors, though there was no fraud in the settlement of the stock ; and in Mc Dermut v. Strong, ib. 687. he reached an overplus in the hand of general assignees, and applied it to the benefit of a bona fide judgment creditor who had used diligence to enforce his demands at law : that case is perfectly in point, and appears to us to decide the present.

No new principle is necessary to support our case. The very reception of the property of another constitutes a trust.

In this country we have no bankrupt law, and our state insolvent laws do not accomplish the ends of justice. Without such a power in the court as we contend for, an immense mass of property is wholly withdrawn from the coercion of law. It is then a plain case for the application of the principle, that

equity will aid when a right is given, but there is no effectual remedy at law.

Mr. Selden, for the defendants. The broad rule stated by the counsel, and by judge Woodworth in the case of Hadden v. Spader, and upon which very much of the reasoning in that case is founded, "that a man is under a moral obligation in "all cases to pay his debts," cannot be supported to its full extent; it must be limited by the condition, that he has the means within his power whereby those debts may be discharged. This limitation particularly applies to the case before the court, wherein the property, sought to be reached, was never under the control of the debtor. Perhaps it equally applies to the ordinary creditor, who is also a defendant in execution ; for until he comes to the possession of the property which is due to him, he has not the means of satisfying the execution.

The case of fraudulent transfers of property, for the purpose of keeping it out of the reach of the creditor, is certainly different, and will be found to constitute the only ground of equitable relief. It is said that the case of Hadden v. Spader, covers the whole ground : by examining the facts of that case, there cannot be a doubt, that it is a palpable case of a fraudulent assignment, whereby the debtor undertook to control his property, to the disadvantage of his creditors, and for the purpose of driving them into his own terms of settlement.

The question made by justice Woodworth, before the court of errors, in Hadden v. Spader was this : "Whether a debt- "or who has placed his funds in the hands of a trustee, where "they cannot be reached by an execution at law, can put his "creditor at defiance, and enjoy the benefit of those funds "which ought to be appropriated to the payment of his debts." Can a case be stated, more fraught with fraud ? It is admitted that his reasoning went beyond the case stated, yet notwithstanding the special manner in which the judgment of the court was given, the case stated above, was the case decided by the court, and the authorities cited in the opinion will confine the aid to be granted by this court to cases of fraud. Even if the court of errors intended to adopt the reasoning of judge Woodworth, that would not constitute that reasoning the law.

How far the opinions of judges are binding upon courts of

justice, is not a matter of uncertainty. They are binding, not only as to the point decided by the court, and which decision is required in the case, but also as to all the reasoning used, without which the conclusion upon the point could not have been drawn. Beyond this, opinions of judges are entitled to no other respect than what is due to the opinions of other eminent lawyers. And in all cases a course of reasoning, leading to general propositions, is to be doubted in courts of justice. Judges can scarcely anticipate to what an extent a broad rule may be applied ; it may seem to apply very well to the case under adjudication, yet may not equally well apply to other cases coming within its general terms.

A strong argument has been sought for in the injustice of exempting from the claims of the creditor the immense amount of property existing in the shape of government stocks, and bank and other stocks, which are called by the counsel choses in action, and which are therefore exempt from execution. And it is triumphantly asked, will this court refuse its aid to reach this property for the benefit of an honest creditor ? I am not called upon to say that this is not a proper subject for the interposition of the legislature.

Some confusion will be found to exist in the books relating to the meaning of the expression choses in action. At the time when the division of property into choses in possession, and choses in action was introduced into the English law, that species of property called stock was unknown. A chose in action is a right to recover possession of property by a suit or action at law. 2 Blac. Com. 400. Now, with regard to government stock, inasmuch as no suit at law can be maintained against the government for the purpose of obtaining possession of property, and all claims against the government are merely applications to their favour, and never can be enforced as matter of right, such claim cannot be considered choses in action. By referring to the statutes 1 Geo. 1. st. 2. c. 19. sec. 11, 12. ; Williams' Digest of the English Statutes, vol. 1. p. 19. 21. ; Also, Title Annuities and Bank ; Bank of England v. Lunn, 15 Vesey, 577., it will be found that the government stock, and the stock of the bank of England are exempted by statute from execution, or from any modes of

transfer, except those pointed out in the different statutes creating them. " And, in fact," says lord Eldon, in the case last cited, " stocks are not liable for the payments of debts while " the party is living, except under a commission of bankrupt- " cy, and for which the bankrupt law provides." It will be found that on the incorporation of the banks in this state, clauses are contained in their charters, pointing out the mode of transfer. In the cases of Crull v. Dodson, Cases in ch. 41. ; 2 Eq. Ca. Ab. 51.; Mussell v. Cook, Prec. in ch. 533. ; 2 P. Wms. 307. ; 1 Phil. Ev. last. ed. 384., government stock and South Sea stock were considered as included in the words " goods, wares, and merchandise," which require a note in writing under the statute of frauds. How can stock of an incorporated company be considered a chose in action ? It is not a debt due by the bank to the stockholder, for he is a member of the corporation himself : it is not a claim due by the cashier or board of directors, for they are the agents of the stockholder, and their possession of the property of the company, is the possession of the stockholders. The inference then is, that stock is not exempt from execution on account of its being a chose in action, but from the impediments thrown in the way by the laws creating them and regulating the modes of transfer. At least in England, it is unquestionably so with regard to the bank of England, the only incorporated banking company in the country. The rule relative to levies under execution, is that nothing can be taken under a fieri facias of which the sheriff cannot, in case of sale, give the purchaser possession. Francis v. Nash, C. Tem. Hardw. K. B. 53. 7 G. 2. ; Bac. Ab. Execution, C. 5. 2 vol. 715.

Applications have been made to aid transfers of ships defective under the register laws, but the applications have always been refused upon the ground that the mode of transfer being pointed out by the statute, a court of equity could not relieve. Abbot on Shipping 58.; Rollston v. Hibbert, 3 Bro. ch. c. 571. ; Reeves on Shipping 389. In the case of York v. Twine, Cro. James 78., an annuity chargeable upon the Queen's revenue was held liable to a fi. fa. ; and this upon the ground that an annuity chargeable upon land could be taken in execution. Com. Dig. Execution, C. 4. vol. 4. 120.

Such an annuity was at least of equal certainty : a fortiori
an annuity, chargeable upon the King's revenues, if not ex-
empted by positive law, or by the King's prerogative.

With regard to government stocks, there may be reasons of
a political nature which would induce a court of equity not
to interfere with them.    Lord Eldon said, in the case of the
Bank of England v. Lunn, that it was the object at the time
of creating the stock, to give a peculiar value to this species
of property.

It now remains to consider by what means, and how far a
court of equity aids execution creditors to obtain satisfaction
of their claims.    It is already decided that an execution must
be returned nulla bona, before the court will interfere in any
way ; Brinckerhoff v. Brown, 4 John. ch. rep. 671., for until
that is done, it cannot appear but that the complainant might
obtain satisfaction of his claim in the court where he obtained
his judgment.    It is not by reason of the peculiar nature of
the final process issuing out of this court, for no more can be
done under a fi. fa. or ca. sa. from chancery, than from a
court of law.

The writ of sequestration will not reach choses in action.
Mc Cartry v. Goold, 1 Ball and Beatty rep. 387. ;  Sim-
monds v. Kinnaird, 4 Vesey, 735. ;  Shaw v. Wright, 3 Vesey,
22. ; see also the statute, 36 Geo. 3. c. 90. ; which was pas-
sed on account of the difficulty which occurred to the chan-
cellor in the last case, whereby the accountant-general was
authorised to make the transfers in certain cases.

The means of extending aid can then only arise from the
power of bringing different parties before the court, and
whereby it is able to operate on third persons, who could not
be made parties in a court of law.    Now there are only two
grounds of equity jurisdiction upon which such parties can be
brought in.    First, that of trusts, and secondly, of frauds.

As to trusts, an ordinary debtor can never be considered a
trustee for his creditor, and as holding his property ; for
should that doctrine be held, the courts of equity would at
one sweep bring within their control the entire jurisdiction
of the courts of common law.    Again, no person can bring a
trustee before the court for the purpose of procuring the pro-

1823.

DONOVAN
v.
FINN.

perty held in trust, but a cestui que trust, all others are mere strangers. The trust may arise, however, either by the agreement of the parties, or by operation of law.

As to specifick articles pledged, the pawnee, or mortgagee, is considered as a trustee for the pawnor or mortgagor; is bound to return them upon the condition being fulfilled, and, if sold, bound to return the surplus beyond what will satisfy the condition : and if the pawnor, or mortgagor assigns, the assignee becomes a cestui que trust for that surplus; so an execution creditor becomes a cestui que trust by virtue of his lien, either on the lands or goods of the pawnor or mortgagor, to the amount of his judgment; for to all intents and purposes the mortgagor is the owner of the property ; it is merely transferred as security, 1 Mad. ch. 412., and the cases there cited. It can never be so considered in case of sale, otherwise, the original owner would have a right at all times to repossess the property for non-payment of the consideration money. The law of mortgages and pledges can therefore never be brought in to support the doctrine now sought to be established by the complainant ; it is even well settled in this state, that without the aid of this court, an equity of redemption may be sold on an execution at law, if the mortgagor is in possession. Waters v. Stewart, 1 Caines' cases in error, 64. ; and in Brooks Ab. Pledges 28., it was held that an execution creditor at law may pay the amount of the pledge, and sell the article pledged under an execution. Cited for law in Scott v. Scholey, 8 East, 467. By referring to the suggestion of lord Ellenborough in the last case, which was resorted to with some confidence by the opposing counsel it appears, that that was an action on the case for a false return of nulla bona to a writ of fieri facias. The question was, " Whether an equitable inter-" est, in a term of years, can be sold under a fieri facias. It is true that lord Ellenborough said, that a court of equity was the proper tribunal to settle and adjust the different and complicated trusts cited in the trust deed, but the cause was decided on the particular nature of the property in question, the court determining, " that an equity of redemption of a term, could " not be taken in execution, because the statute of frauds did " not embrace chattel interests, but that those interests were

" meant to continue in the same situation and plight in respect " to executions in which both freehold and leasehold trust in- " terests equally stood prior to the passing of that statute." This decision makes nothing in favour of the complainant's argument.

The case of Mc Dermut v. Strong, 4 John. ch. rep. 687. is also a case of the redemption of a mortgage by an execution creditor ; the case of King v. Dupin, 2 Atk. 603., which is the same case as King v. Marissal, 3 Atk. 192., as will be found by noting the facts and parties mentioned in the report, is also a case of an application to reach mortgaged property.    This will appear more fully by examining the case of Shirley v. Watts, 3 Atk. 200., in which lord Hardwicke alludes to his previous opinion in King v. Marissal. There is another class of trusts created by the statute of frauds or which, according to lord Mansfield's opinion of the law of frauds, existed before the statute, which will be found to include all the cases, except mortgages and pledges supposed to bear upon the question before the court ; and they include the second ground of equity jurisdiction before mentioned, to wit, that of fraud.

By examining the second section of the statute, all assignments of property therein mentioned, are declared void, not with respect to the person making the assignment, as in the first section, but as respects the creditors of the person making the assignment.    How then does the assignee hold ? not in his own right, inasmuch as the assignment is void against creditors ; not in right of the assignor, inasmuch as the assignment is good and effectual against him ; he must, therefore, hold as trustee of the creditors of the assignor, and can hold in no other way.    Again, the second section does not seem to be confined to assignments of such property as might be reached by an execution at law ; the words are, " lands, " tenements, hereditaments, goods and chattels, or of any of " them, or of any lease, rent, common, or other profit out of " the same lands, tenements, hereditaments, goods or chattels, " or any of them."    From an examination of the English cases cited in Hadden v. Spader, the rule avowedly reaches other property, not subject to execution ; see also the case of

1823.

DONOVAN
v.
FINN.

Bayard v. Hoffman, 4 John. ch. rep. 450. Here then another objection is removed, which is raised by the counsel for the complainant; it is said, inasmuch as in several cases it appears that the property assigned, would not be subject to the execution, had not the assignment been made : therefore no fraud could be intended against the execution creditor, for in those very cases, it was admitted, that whether the execution could have reached the property or not, the assignee becomes possessed of it as trustee for the creditor. The statute is not confined to actual fraud, intended at the time of making the transfer, but extends to any kind of voluntary conveyance or colourable assignment, whereby the creditor may be defeated of his claim : it is not even necessary that the party should be indebted at the time he makes the assignment; but if he does it with view to be indebted at a future time, it is equally fraudulent, and ought to be set aside. Stileman v. Ashdown, 2 Atk. 477.

The case of Estwick v. Caillaud, so far from aiding the complainant, is in perfect coincidence with the principle before stated. The court say that the assignment, as far as it related to the payment of the scheduled creditors mentioned, was, " calculated to answer a fair and legal purpose by legal " means :" that when those creditors are satisfied, the other creditors may apply to the court of equity for the residue ; that is to say, that as regards the residue, the assignment was voluntary, and therefore the statute of frauds converted the assignees into trustees for the other creditors, and that a court of equity would enforce the trust. On examination of the cases, it will be found that the rule above laid down is the law regulating equitable aid. In Taylor v. Jones, 2 Atk. rep. 600., the property transferred was government stock, yet the species of property was not made a subject of argument by Fortescue the master of the rolls, or the counsel; and the only question was, whether the assignment was fraudulent under the statute 13 Eliz. (2 sec. of the statute of frauds, N. Y. R. L. 75.) It was a voluntary conveyance made by a man to trustees for the benefit of his wife and children; not made in consideration of marriage, but after; it was therefore held fraudulent, as it regarded creditors, although good against

the husband. The case of Partridge v. Gopp, was decided on the same principle, and lord keeper Northington said, that the statute extended to all cases, unless the alienation was bona fide, and made upon good consideration, and that blood was not held to be a good consideration within the statute.

1823.

DONOVAN
v
FINN.

The only question in the case of Horn v. Horn, Amb. rep. 79., and in relation to which, the facts were stated in the case was, whether, inasmuch as a ca. sa. had been issued, and the defendant taken thereon, the complainant could, even under any circumstances, ask for equitable aid? and lord Hardwicke said no. But at any rate Ambler is a reporter deserving little credit; see his preface, and the introduction to Eden's reports, and the note in 1 Ves. jun. 196.

On examining the case of King v. Dupin, see above King v. Marissal, cited by the chancellor in Bayard v. Hoffman as in a note to Taylor v. Jones, notwithstanding chancellor KENT says it was a case where there was no fraudulent settlement in the way, we shall find it a clear case of fraud under the statute, and that lord Hardwicke decided it upon that ground. He was of opinion, that so far as the assignment was for the benefit of a creditor, it was good; but that the reversionary interest might be reached as being for his own benefit. The case of Angel v. Draper, decides nothing more than that even a bill of discovery, by a judgment creditor, could not be sustained until a fi. fa. was returned nulla bona at law; and had the case been decided, it would not have gone beyond the case of mortgaged or pledged property, where, upon payment of the amount for which the property had been pledged, the execution would have attached, and therefore the plaintiff have been permitted to redeem. The decision attributed to lord Northington, in Balch v. Westall, goes no further than that a bill might be sustained, to discover property which might be reached under an execution.

The case of Lewkner v. Freeman, Prec. in ch. 105.; decides nothing more than that the assignment of property for the payment of debts, " was not fraudulent either in law or " equity, for such debts as are named in the deed." " But

" that the plaintiff may have an interest in the surplus."
Why an interest in the surplus ? Because, should there be a
surplus, the conveyance was as to that voluntary.   This case
cannot be distinguished from that of King v. Marissal.

It was said by the counsel, that there was no fraud pre-
tended in the case of Bayard v. Hoffman : but the chancel-
lor says, " here is a case of a voluntary settlement, by an
" insolvent debtor, which is void under the statute."   The
counsel appears to have committed an error, from considering
that conveyances must be actually made in bad faith, at the
time of their execution, to constitute them fraudulent.

It was asked, why, if lords Hardwicke and Northington
entertained this jurisdiction, on the ground of fraudulent con-
veyances, did they require an execution to be issued, and
returned nulla bona at law, before coming into this court ?
The answer is plain; if the plaintiff could obtain satisfaction
at law, he had no right to complain of the conveyance, and
it shall stand good against him who made it.   The very rea-
son why it becomes fraudulent as to the creditor, is, that
thereby the defendant is unable to satisfy his demand.

There is another class of cases which goes to show that this
relief should be confined to cases of fraud.   The doctrine
will be found in Newland v. Champion, 1 Ves. sen. 105.
lord Hardwicke—" The general rule is plain, that a creditor
" of the testator need not make any one but the personal re-
" presentatives a party : at the same time, in this court, if
" there are any persons who have possessed themselves of
" the estate, or any debtor of the deceased, and any collusion
" between them and the representative, they may here,
" though not at law, follow the assets, and make them par-
" ties, and demand the account against them.   But this is
" not to be done unless there is some proof of collusion."
Doran v. Simpson, 4 Ves. 651.   Upon the same ground re-
ceivers on estates are appointed; Taylor v. Allen, 2 Atk,
213.

The case of Dundas v. Dutens, it is admitted, is unsatis-
factorily reported ; yet there is no doubt as to lord Thurlow's
opinion, that choses in action or stocks cannot be reached in
ordinary cases by this court.   There are two circumstances

in this case which appear not to have been adverted to: 1st. The complainants were not judgment creditors: 2d. The trustees to whom the stock was transferred were not parties to the bill.

That a conveyance is often considered fraudulent as to subsequent creditors, I cite Reade v. Livingston, 3 John. ch. 481.; and the cases there cited; also Bac. Ab. Title, Fraud, C. 3 vol. 311. These cases are cited to meet an objection which may be made to the cases of King v. Dupin, and Lewkner v. Freeman.

The case of Utterson v. Mair, 2 Ves. jun. 95.; is full to my purpose. The complainant had obtained a judgment against the executors of a bankrupt, for a debt which arose after the bankruptcy of the testator. The bill was filed against the executors and the assignees of the bankrupt, to have the surplus of his effects, which remained in their hands, applied to the payment of the judgment; but Lord Rosslyn decided, that " this bill cannot be supported on any principle of jus- " tice ;" and again, " if this suit was to stand, the conse- " quence would be, that every creditor would be entitled to " such a bill against every individual debtor, and the account " would be inextricable." This case also supports one of the main points of my argument, that assignees cannot be converted into trustees for creditors, except on the ground of fraud. The assignment, in this case, under the bankrupt law, could not be considered fraudulent, and of course, the assignees could not be considered in equity as trustees of the surplus for creditors.

The case also settles another important principle in this controversy, that the creditor is the proper and only person to collect or sue for his debts; for his lordship further decided, that the executors were the proper and only persons to collect or sue for the debts of the testator.

It is impossible to calculate the consequences that would result from extending the jurisdiction of chancery to all cases, whether of fraud or not. Parties would be deprived of a trial at law, and before a jury; and the jurisdiction of this court would be extended beyond all bounds, and would embrace an extent of litigation far exceeding all which now

1823.   comes before it, and far beyond the ability of the court to settle.

DONOVAN
v.
FINN.

But it is contended that the decision is necessary, because we have no bankrupt law : to say the least of it, it would be an alarming and cruel substitute for a system of bankruptcy.

There cannot be a harder case than the one before the court. The fund sought by the complainant, does not belong to the defendant Finn, until the executors choose to pay it : they are the absolute owners of the testator's personal estate, until the estate is settled. A legatee has no claim thereto, unless by their consent ; 2 Bac. Ab. Title, Executor, H. 1. 3 vol. 57. He cannot apply the fund himself, nor reach it without giving security, which he is unable to obtain, and yet he is to be burthened with the expense of this litigation, if the complainant's application to the equity of this court should be granted.

24th December.

THE CHANCELLOR. The objection of the defendants, that the judgment of the supreme court was wrongful or unjust, can not be allowed ; since that objection arises entirely, from matters which were used, or might have been offered, as a defence in the suit at law.

The judgment obtained by the complainant against James Finn, is therefore not open to examination ; and it must be here regarded as just.

The complainant having obtained this judgment against James Finn, issued an execution against his property ; upon which, the sheriff returned, that he found no property from which he could levy the debt. A legacy of an amount much larger than this judgment, has been bequeathed to the defendant James Finn, by Robert Finn deceased ; the three other defendants in this suit, are executors of the will of Robert Finn ; they have in their hands as executors, funds amply sufficient to discharge the legacy to James Finn ; and the object of this suit, is to obtain satisfaction of the judgment against James Finn, by compelling the executors of the will of Robert Finn, to pay to the complainant so much of the legacy bequeathed to James Finn, as shall be sufficient to discharge the judgment.

The case of a legacy presents some peculiar considerations; but the opinion which I have formed in this cause, will render it unnecessary to discuss them, or to consider this legacy, as different from any other debt to James Finn. If an ordinary and acknowledged debt to a defendant, against whom judgment has been obtained by his creditor, can not be converted to the satisfaction of the judgment, by this court; it is clear, that a legacy, of which the payment may depend upon many conditions, can not be so applied. It is also proper, to decide the more general question which the cause presents; as that question is depending in many other suits in this court, and is of most extensive application in the concerns of creditors and debtors. For the purpose of this inquiry, I shall therefore consider the legacy as a mere debt, absolutely due and payable to James Finn.

The cause thus considered, presents these facts. A creditor has obtained judgment against his debtor, in a court of law; an execution has been issued against the property of the debtor; and the sheriff has returned that none is found. The debtor has property, consisting in a debt due to him; and the creditor by judgment, now asks this court, to compel the debtor of his debtor to make payment to him, in satisfaction of the judgment.

Has this court jurisdiction in such a case, or power to give such relief? To apply existing laws to new cases, is the duty of courts of justice, and is not an encroachment: and the application of established principles of equity, to new cases, in this court, is not an extension of its jurisdiction. But this court has no power, to assume any jurisdiction, really new, and extending beyond the limits of its established authority.

It is apparent, that this case does not belong to any general head of equitable jurisdiction; such as frauds, trusts, accidents, mistakes, accounts, or the specific performance of contracts. Here is neither fraud, nor trust, nor accident, nor any other ingredient of equitable jurisdiction. It is the simple case of two debtors and two creditors; of whom one is both debtor and creditor; a case in which, the rights and the remedies of the respective parties, have hitherto been enforced exclusively in the courts of law.

The English cases which are cited, as applicable to this question, have been fully examined by the late chancellor, in cases before him; and they were also reviewed by judge Woodworth, in the case of Hadden v. Spader, 20 Johns. 562. It is not shown, by any one of those cases, that the English chancery ever touched an ordinary debt due to the judgment debtor, for the purpose of applying it to the satisfaction of the judgment. The English books, are therefore by their silence authority to show, that no such doctrine was ever entertained in the English courts of equity. The English cases cited, proceeded, as I conceive, not upon the ground of subjecting the credits of the judgment debtor, to the payment of his debts, but upon some ground of equitable jurisdiction, as fraud, or trust, existing in each case. The case of Taylor v. Jones, 2 Atk. 600. ; was a case of fraud and trust. But I forbear to enter into a particular examination of those cases ; because, they by no means embrace the extent of the present question ; and because, so far as they extend, I concur with judge Platt, 20 John. 575, in thinking, that they present such a contrariety of decisions and loose expressions, that we are at liberty to decide the question upon principles.

The cases adjudged by our own courts, have proceeded, I conceive, not upon the doctrine, that this court has power to attach a debt due to the judgment debtor, and to apply it to the satisfaction of the judgment creditor ; but upon some fact or ingredient of equitable cognizance in each case, which gave jurisdiction to this court. The case of Bayard v. Hoffman, 4 Johns. ch. 450, was not the case of a judgment creditor ; but the object of the suit, was to annul an assignment in trust, made by a debtor without consideration. The assignor was insolvent, when the assignment was made ; that fact not being then known, no actual fraud was intended ; but the assignment had all the operation of fraud, against the creditors of the insolvent debtor. Fraud, trust, and a conveyance without consideration, where the characteristics of the case ; and for these reasons, the case was of equitable jurisdiction.

In the case of Mc Dermut v. Strong, 4 John. ch. 687., an

assignment by an insolvent debtor, in trust for certain objects, was declared to be incompatible with the rights of a judgment creditor. The property assigned was a ship ; an execution at the suit of the judgment creditor, could not be levied upon the ship, by reason of the assignment ; and the object of the suit, was in effect to vacate the assignment, as an impediment to the due effect of the execution. This court gave relief ; and the effect of its decision was, to remove the assignment which stood as a special obstacle to the due course of law.

1823.

Donovan
v.
Finn.

The case of Hadden v. Spader, 5 John. ch. 280. and 20 John. 554., was also a case of an assignment by an insolvent debtor, of property upon various trusts. It was clearly a case of trust ; the assignment was charged to have been made by fraud ; and though the answers denied that fraud was intended, the facts exhibited a case of fraud. The effect of the assignment, if it had prevailed, would have been to withdraw and screen from execution the property of the debtor ; the assignment was held to be void ; and the judgment creditor had relief.

These are the principal cases, which have been adjudged in this court ; and in all of them, some acknowledged ground of equitable jurisdiction, existed. In general, they were suits to set aside conveyances, which prevented the seizure of property by the sheriff ; and the conveyances have been considered frauds, either actual or constructive. They have been cases in which the property assigned, would have been subject to the execution of the judgment creditor, if the assignment had not been made ; and the assignment has been impeached, upon some ground, which gave cognizance of the case, to this court. In giving relief in such cases, this court does not proceed upon the idea of giving execution against a species of property, which is exempt from execution at law ; but it acts upon some of the most ancient grounds of its jurisdiction, which enable it to give relief in cases of fraud and trust, either to a judgment creditor, or to any other person whose just rights may be destroyed or impeded, by such a cause.

The case of Hadden v. Spader, was finally decided by the court of errors ; and the decree of this court was affirmed. I consider the decision of the court of errors, in that case, as

establishing precisely, what the late chancellor had before decided, by his decree in the same cause, and nothing more : and I fully concur with judge Platt, in his opinion given in that case, and in his view of the powers and jurisdiction of this court, in respect to the rights and remedies of creditors.

The case now to be decided, has not one feature of equitable jurisdiction. In it, there is neither fraud nor trust nor conveyance of property, nor any interruption of the effect of an execution, or the due course of justice, at law. It is the case, so common in the transactions of society, in which a person, being the debtor of one man, is at the same time, the creditor of another, without fraud or trust; the several parties standing merely in the general relation of debtors and creditors. In such a case, this court has no power to compel C, who is indebted to B, who is the debtor of A, to make payment to A ; and this court is equally destitute of jurisdiction, to compel such a payment, whether A has obtained judgment against B, or not.

*Where the subject of a suit is exclusively legal, equity has no jurisdiction to enforce or to give a better remedy.* According to our distribution of jurisdictions, suits for the recovery of ordinary debts, are appropriated to the courts of common law ; and the proceedings for enforcing the judgments rendered in such suits, are alike allotted to those courts. In any such case, where the subject of the suit, is exclusively of legal cognizance, a court of equity has no jurisdiction to enforce the judgment, by its own methods of proceeding, or to give a better remedy than the law gives. If the remedies of the law are imperfect, equity, as has been often said in the English chancery, has no jurisdiction to give execution, in aid of the infirmity of the law. When any fact giving equitable jurisdiction, intervenes in the transactions between creditor and debtor, such a fact becomes a foundation of relief in this court ; but in any ordinary case free from fraud or injustice, the execution of the judgment, and the methods of compelling satisfaction, are confined to the courts of law.

*There must be some foundation for equitable interference, such as trust, fraud, &c.* When a creditor comes to this court for relief, he must come, not merely to obtain judgment or satisfaction of a judgment, but he must present facts, which form a case of equitable jurisdiction. He must show, that the debtor has made some fraudulent disposition of his property, or that the case stands

infected with some trust, collusion or injustice, against which 1823.
it is the province of this court to give relief. In such cases,
this court has jurisdiction, not for the purpose of giving a DONOVAN
v.
species of execution, which the courts of law do not afford; FINN.
but for the purpose of giving relief in the particular cases
allotted to its jurisdiction; and when the cause, by reason of
such facts, is properly here, the court proceeds, upon all the
circumstances of the case, to give final and effectual relief.

When, upon an execution, the sheriff returns, that no pro-
perty of the debtor is found in his county, the return is evi-
dence of the fact stated; but neither the return, nor the fact
returned, gives any jurisdiction to this court. If the same
fact were returned from every county of the state, these reme-
dies at law would be exhausted; but equity would have no
jurisdiction, upon the mere ground that no property had been
found by the sheriffs. But when equity has jurisdiction, by
reason of some disposition of the debtor's property, made in
fraud of the creditor, and when in such a case, the sheriff of
the county in which the property is situated, returns upon the
execution that no property is found, the return is important
evidence to show, that the fraudulent disposition has had effect,
by preventing the service of the execution.

By the existing law, the property of a debtor, consisting of *Choses in action are not*
things in action, held by him, without fraud, is not subject to *liable to exe-*
the effect of any execution issued against his property; and *cution, either in law, or in*
while a court of law does not reach these things, by its exe- *equity.*
cution, a court of equity does not reach them, by its execu-
tion, for the purpose of satisfying either judgments at law or
decrees in equity. To subject these things to the satisfaction
of a judgment, by seizing and selling them, like goods in pos-
session, would be to alter the established law of the land; and
this court has no power to make such an alteration, in the name
of equity. The maxims, that every right has a remedy, and
that where the law does not give redress, equity will afford
relief, however just in theory, are subordinate to positive in-
stitutions, and can not be applied, either to subvert established
rules of law, or to give to this court, a jurisdiction hitherto
unknown.

When it is said, that a debtor may now, convert all his ef-

1823.

DONOVAN
v
FINN.

fects into stocks, credits, or other things in action, and may in his own name, or the name of a friend, hold his property in these forms, in defiance of his creditors ; our laws are reproached by a vague assertion, which is partly true, and is to a much greater extent, erroneous. All conveyances made to defraud creditors, are void, both in law and equity. When the fraud appears to a court of law, the conveyance is there, adjudged void. When such a fraud is presented to this court, it is of equitable jurisdiction ; and the property of the debtor, fraudulently transferred, is subjected to the satisfaction of his debts, in favor of a creditor complaining of the fraud. Does an insolvent debtor transfer his property · to another person, in trust for himself, or in such manner as to defeat the effect of a judgment and an execution ? This is the frequent case ; it is a case of both fraud and trust ; and it is of equitable jurisdiction. It was the case of Mc Dermut v. Strong, and of Hadden v. Spader. In all such cases this court vacates the fraud, sets aside the conveyance in trust ; and acting both upon the debtor and his trustee, it does complete justice to the creditor. Thus, the jurisdiction of this court, reaches and reaches effectually, those cases of fraudulent conveyances and assignments in trust, which form the great and most vexatious impediment, in the course of justice between creditor and debtor. Bills for discovery, where no relief is sought, also afford important aid to creditors against their debtors. But this court has no power to cause stocks, credits and rights of action, held by a debtor, without fraud, to be sold, or converted into money, or to be transferred to the creditor, or to be applied to the payment of debts. The English courts of equity, have never exercised any power like that now proposed, over the rights of a debtor ; and it is certain, that no such power has ever been exercised by any court in this state.

But it is said, that a failure of justice must take place, if such a jurisdiction should not be exercised by some of our courts of justice. How, it is asked, is all that class of personal effects, consisting in stocks, credits and property in action, in various forms, a class of property which in this community, is very great, to be subjected to the payment of debts ? That

such property should be made subject to the payment of the debts of its owner, is not denied. That such property can not be seized or sold by the sheriff, upon an execution, is the existing law of the state. That in the present state of our laws, a debtor sometimes holds and enjoys this species of property, while his debts remain unpaid, may be true. These reasons may show, that the existing laws are imperfect, and that some convenient method of subjecting this class of property to the payment of debts, would be a desirable amendment; but they do not show that this court, or any other tribunal, has power to make such an amendment. The argument so strongly urged, that justice requires some new remedy in these cases, is an argument to be addressed to the legislature, and not to the courts of either law or equity.

Our ancient law was not destitute of a remedy, in such cases. That law was intended and adapted, to compel the application of all the property of the debtor, to the discharge of judgments against him; and for that purpose different kinds of executions, were provided. By executions against his property in possession, that species of effects was subjected directly, to the discharge of a judgment; but his things in action, were reached only by an execution against his person, upon which he was imprisoned, until he should satisfy the judgment. The execution against the person was a method of coercion, intended to bring forth, for the satisfaction of the judgment, all such effects of the debtor, as could not be subjected to other executions; and it was a powerful remedy. That remedy has been gradually relaxed by the legislature, until it has nearly lost its efficacy: and while this great change respecting execution against the person, has been made, the rules concerning executions against property, have remained without alteration. Thus, the imprisonment of the debtor as a remedy, has been in effect, taken away; no effectual method of execution against his property in action, has been substituted; and this change in our laws, has been made by the legislature itself.

The legislature has indeed, made some provisions for the benefit of creditors, in these cases. By the acts for giving relief in cases of insolvency, now in force, an assignment of

all the property of a debtor, imprisoned in execution, may be obtained for [the benefit of his creditors, in certain cases, and upon certain conditions. This remedy is tardy, incumbered with conditions, and inadequate to the ends of justice. Still, it is the remedy which the legislature has given, after the legislature itself had, in effect, abolished the coercion of personal imprisonment. Equity, as a system distinct from law, has been raised and matured into its present perfection, not for the purpose of preventing or controlling the operation of statutes; but in order to supply other defects, and to afford justice where injustice was produced, by severe rules of the common law. The idea that this court has power to provide for all the mischiefs or inconveniences, which may result from the operation of new statutes, is repugnant both to the established limitations of its jurisdiction, and to the constitutional separation between the legislative power and the power of the courts of justice.

Various laws concerning bankrupts, insolvent debtors, and absent and absconding debtors, make, or have heretofore made, ample provision, that all the rights in action of the debtor, shall be vested in assignees or trustees, for the benefit of all his creditors; and while such laws show, what justice and public policy have been supposed to require, they also show, that the general law on this subject, can be altered only by the legislative power. If such laws, or any of them, are not now in force, it is because the congress of the union, or the legislature of the state, have not passed them, or have repealed or modified those which had been enacted.

It is said, that the court of chancery of England, has never exercised a jurisdiction like that now proposed, because redress to creditors, in these cases, is afforded by the bankrupt laws of that country. This inference is altogether unsound. If the English chancery had ever possessed such a jurisdiction, the fact would appear; and that jurisdiction would have been exercised, in the numerous cases, to which those bankrupt laws do not extend. The bankrupt laws of England, were made, to give redress which the courts and laws of that country, did not before, afford; and if those bankrupt laws were repealed, it would not follow, that the English

chancery would have power to accomplish objects, which, in the opinion and practice of that country, could be effected only, by an entire system of statutory regulations.

If the attempt now made, could prevail, it would be, in effect, nothing less, than to introduce a new law of attachment, for the benefit of particular creditors, through the process of a court of equity.

Our law for relief against absconding and absent debtors is a law of attachment. This special statute, containing a system of provisions in detail, is alone, a sufficient proof, that the proceeding by attachment, can be authorised only by the legislature, and that such a process or power, belongs not to any court of this state, in virtue of its general jurisdiction. The attachment given by this statute, embraces all debts due to the debtor ; is for the benefit of all his creditors ; and is authorised only against absent, absconding and concealed debtors. The legislature has not given this remedy against debtors residing or found within the state, and subject to the full operation of its general laws. The attachment now proposed, is against a single debtor of the judgment debtor, for the benefit of the judgment creditor ; and all the parties reside in the state. Thus it is proposed, that this court shall institute a new species of attachment against debtors within the state ; a new method of justice in favor of creditors, differing greatly, from any attachment or any execution, hitherto known ; and which, however it may be recommended, has not yet been adopted by our laws.

In several of the states of the union, there are laws of attachment, by which a creditor may sequester or attach, for his exclusive benefit, a debt due to his debtor ; and it is said, that these laws are useful and efficacious, in promoting the ends of justice. But in all those states, these attachments have been introduced and established by special acts of their legislatures ; this proceeding being unknown equally to the common law and to the equity of England.

But while the attachment of the debt due to a debtor, for the benefit of the creditor instituting the suit, is a proceeding unknown to the general system of English law and equity, it is fully established in the city of London, under the name

of the custom of foreign attachment, and it there takes place in a local court of special jurisdiction. Thus stand, both the general law, and the exception to it, in England ; and equity has never altered, but has always followed the general law. This court is now, for the first time, asked to do, what, in England, is done, only in London, by a special custom of that city ; what in other states of this union is done only under the provisions of special statutes ; and what in this state, has never yet been done or authorised, by any law.

If this court were at liberty, to enlarge its powers, in the manner now proposed, the extent and consequences of so great an innovation, would deserve to be well considered. Is the right to this attachment, to be given to the creditor who institutes a suit ? or to him who has obtained judgment ? or to him only, who has issued an execution, which proves ineffectual ? When the debtor is insolvent, justice requires that all his property should be distributed ratably, among all his creditors. Is it proposed, that this court shall perform all the various offices of a law of bankruptcy ; shall take upon itself, the administration of the estates of bankrupts ; shall collect all the effects of a debtor, which can not be seized by the sheriff ; and make distribution among creditors who shall prove their debts ? To what species of debts or property in action, shall this attachment be applicable ? Is it to extend to all contracts, demands and rights of action, admitted or contested, which the debtor may hold against other persons ? Where the property of a debtor consists in effects, which can not now be sold by the sheriff, is the creditor who has obtained judgment, to find, that a suit in equity, is necessary, in order to obtain the effect of a suit at law ? Is a suit at law, to be the parent of a suit in equity, in the multitude of these cases which always exist ? When A institutes a suit at law, against B., the cause is determined according to the course of the common law : but when A has obtained judgment against B., who has a claim against C., which also belongs to legal jurisdiction, is C to be impleaded in equity by A, and to defend himself there, against A., when if C had been impleaded by his own creditor B, the suit must have been in a court of law ? Is a judgment at law, against the first debtor, indis-

pensable, because the case is of legal cognizance ; and is it insisted that the case of the second debtor, of the same nature, is not of legal, but is of equitable jurisdiction ? Under the constitution, the course of the common law, the trial by jury, and the system of equity, must all be maintained, in their respective spheres of operation.  If the existing difficulty in these cases, arises from the rule of law, that stocks, credits and rights of action, can not be sold by the sheriff ; is that rule salutary, since the remedy by imprisonment of the debtor, has been so greatly relaxed ?  If some new proceeding, by way of attachment or execution, against the rights in action of a debtor, is requisite, on what courts or officers shall such a power be conferred? and in what cases, and under what regulations shall it be exercised ?  But I forbear to pursue these inquiries and reflections ; and these are suggested, merely to show the magnitude of the innovation now proposed.   Should this court take cognizance of these cases, they would form a chapter of jurisdiction, far more ample than any one which it now possesses ; and the assumption would be a bolder stride of power, than was ever made by the English chancery, in any single age.   The maxim which teaches, that a judge should amplify his own jurisdiction, has no place in our institutions.   The utility of this court, so important in the general structure of our system, will be best consulted and preserved, by preserving its jurisdiction within the limits which are now established.

My views of this question, terminate in the following results.

1. The cases, of authority, in which relief has been given to judgment creditors, were, in themselves, cases of equitable jurisdiction, involving fraud or trust, or seeking to subject to the satisfaction of a judgment, property in itself, liable to execution, by removing a conveyance, which operated as a fraudulent impediment to the execution.

2. This court has no power, to compel the debtor of a judgment debtor, to make payment to the judgment creditor, in satisfaction of the judgment.

The suit is dismissed, with costs.

This court has no power to compel the debtor of a judgment debtor, to make payment to the judgment creditor.