LAMPMAN (PENDERGRAST v.). See Case No. 10,919.

## Case No. 8,034.

### LAMSON v. MIX et al.

[6 Hunt, Mer. Mag. 72.]

Circuit Court, S. D. New York. 1837.

PRACTICE IN EQUITY — FROM WHEN DERIVED IN FEDERAL COURT—JURISDICTION BY STATE STATUTE—GENERAL JURISDICTION —GARNISHMENT OF JUDGMENT.

[1. The chancery practice in the federal courts is derived directly from the English high courts of chancery, and is not made to conform to the chancery practice in the state courts.]

[2. The state laws furnish rules of decision to the federal courts in cases of common law, but a state law cannot enlarge the subjects of chancery jurisdiction in the federal courts.]

[3. In a bill against four defendants, it is alleged that a judgment at law has been recovered by the complainant against three of them, and that the judgment cannot be made upon execution against the three, and asking that H., the other defendant against whom the three have recovered judgment in a state court, may be enjoined from paying the money thereunder over to the three, and required to pay it into court, to be applied in satisfaction of the complainants' claim. The law does not make the second judgment liable to execution in favor of the first. *Held* that. independent of statute, this is not a subject for chancery jurisdiction.]

[Cited in Ex parte Waddell, Case No. 17,027.]

In equity. A judgment was recovered in the circuit court at law in favor of the complainant, against three of the defendants. A bill was subsequently filed on the equity side of the court, alleging the inability of the three defendants to pay the judgment, and averring that H., the other defendant, owed two of his co-defendants the amount of a judgment recovered against him by them in the superior court of this state, and praying that he might be enjoined from paying that money to them and be decreed to pay it to the complainant, and also praying a like injunction and appropriation as to all their choses in action, &c. The proposition to have the benefit of that

judgment being the point upon which the decision turned, and that judgment being the only means shown by the bill to be possessed by the defendants for which the interference of the court could be required, the other averments and interrogatories are omitted. Application was made upon the bill to the district judge for an injunction, &c.

BETTS, District Judge. The chancellor of this state having refused to entertain a creditor's bill on the basis of a judgment recovered in the United States courts (Tarbell v. Griggs, 3 Paige, 207), this bill is filed to obtain here the relief administered in the state court in like cases. The right of the complainant to this relief is sought to be maintained—1st, because it is supplied by a statute of the state; and, 2d, upon general principles of equity jurisprudence.

1st. Whether the state act (2 Rev. St. 173, 174, §§ 38, 39) is to be regarded as declaring the competency of the court to grant a remedy in the case, and thus affirming or enlarging its course of practice, or whether it is understood as recognising the principle, and furnishing thus a rule of decision, it can in neither case give this court an authorization to act out of its accustomed sphere. The practice of the United States court in equity is not drawn from nor regulated by that of the states. [Young v. Grundy] 7 Cranch [11 U. S.] 550. It is governed by their own specific rules, and is made conformable to that of the high court of chancery of England. [Robinson v. Campbell] 3 Wheat. [16 U. S.] 221; [Boyle v. Zacharie] 6 Pet. [31 U. S.] 658, 659; [Vattier v. Hinde] 7 Pet. [32 U. S.] 274. This court accordingly acquires no authority to grant the remedy prayed for in this case from its being conferred by the local law or the state tribunals,—[Wayman v. Southard] 10 Wheat. [23 U. S.] 24,—unless it be made to appear that it is a known course of the English chancery, or is expressly prescribed in the stated rules of the supreme court or this court. The state laws furnish the rule of decision in the courts of the United States in cases at common law. 2 Laws U. S. 70, § 34. But the equity jurisdiction of those courts is one and the same in every state, and is in no respect dependent upon the local law. [Robinson v. Campbell] 3 Wheat. [16 U. S.] 221, 222; [U. S. v. Howland] 4 Wheat. [17 U. S.] 108; [Boyle v. Zacharie] 6 Pet. [31 U. S.] 658; Vattier v. Hinde] 7 Pet. [32 U. S.] 274. It is in conformity with the rules of jurisprudence administered in the court of chancery in England. 3 Story, Const. 506, 507. If therefore the state act is to be regarded as introducing new matter within the scope of chancery jurisdiction, and as conferring powers beyond those recognised by the general principles of equity jurisprudence, clearly such legislation supplies no rule of decision to this court.

2d. But it is insisted that Hadden v. Spader, 20 Johns. 554, is decisive of the point of jurisdiction upon general principles, and establishes the doctrine that chancery will aid an execution creditor by seizing credits and effects of his debtor not liable to execution, and appropriating them in satisfaction of the judgment. This decision has been subjected to much discussion and question in the courts of the state (1 Hopk. Ch. 59; 3 Wend. 360), and although the judge who pronounced the opinion of the court of errors, argued in support of the broadest authority of chancery in this behalf, it is at least doubtful whether the case actually presented demanded the suggestions which were advanced, or can give them the effect of an adjudication. Most certainly the decision of the court of errors applied to the pleadings between the parties may be sustainable upon principles entirely distinguishable from the conclusions to which Judge Woodworth's argument is directed.

Looking at the naked case as stated in the pleadings (5 Johns. Ch. 280; 20 Johns. 554), it is one in which the complainant alleges that his judgment debtor has assigned goods to a large amount to the defendant without adequate consideration, and thereby hindered or defeated execution against them, and the power of the court is invoked to submit such goods and chattels to the operation of the execution. It may be admitted that such a case would well warrant the decree rendered in the cause; whether the assignment was avoided because fraudulent as against creditors, or as interposing an impediment to the running and operation of an execution at law as against tangible property which ought to be subject to it. 4 Johns. Ch. 452, 687; 1 Hopk. Ch. 59; U. S. v. Sturges [Case No. 16,-414]; Bean v. Smith [Id. 1,174]; 4 Cow. 682. These cases rest upon the familiar and well-established jurisdiction of the English chancery in that behalf. Judge Woodworth holds the party entitled to relief upon a wider equity than this: That he may have the aid of chancery to transfer to him all rights and credits appertaining to his debtor. As the greater remedy will contain the less, he of course can have visible and tangible property secured him as a consequence of his right to every description of interest which his debtor might claim. This wide, sweeping doctrine is pronounced, by the court of chancery of the state, extrajudicial, and of course without authority over other tribunals, and that court denies that the hypothesis of the learned judge is consonant to the principles of equity jurisprudence. 1 Hopk. Ch. 59.

The court of errors in a subsequent case very significantly intimates that the views of Judge Woodworth, without the sanction of an act of the legislature, could not be successfully maintained as a rule of chancery jurisdiction. 3 Wend. 360. Let it then be admitted that a direct adjudication of the court of errors on the point of law would become a rule of decision in this court equally as in the courts of the state, I think it manifest that there is no such authority in the case referred to, and that notwithstanding the

strong language used in pronouncing the opinion in that case, the question is open to examination upon the general principles of chancery law, whether a judgment creditor can in this court compel the application of debts and choses in action belonging to his debtor to the satisfaction of such judgment. This question is to be determined by the established and recognised principles of the English law in this behalf; both the United States and the state courts adopting that as their common standard. The authority of the English decisions ceases in the state court if made after April, 1775. 20 Johns. 554. Probably the process act (2 Laws U. S. 299, § 2) may interpose an equivalent limitation in the United States courts after 1792. [Manro v. Almeida] 10 Wheat. [23 U. S.] 473. It seems conceded by the court of errors, in Hadden v. Spader, that since 1790 the rule prevailing in England is adverse to the doctrines advanced in that case, and if this court administers the law as it existed in 1792, it would seem to follow that the enunciation of a new course of decision in 1790 might supersede here, equally as in England, the force of any anterior rules. That the English chancery does not now administer the relief sanctioned by that case is unquestionable. 2 Kent, Comm. 443, 4 Kent, Comm. 430. But I am inclined to the opinion that the cases clearly show that the new decisions proceed upon the assumption that the law was always in that country as then declared, and that they are not regarded as establishing any new rule. 9 Ves. 180; 10 Ves. 368; 7 Price, 274.

After the critical and careful review of the cases by Judge Woodworth in support of his opinion, by Chancellor Sanford, (1 Hopk. Ch. 59), and the manifest approval of his reasoning by other judges who have adverted to the subject (Walworth, C. J., 9 Cow. 724; Marcy, J., 3 Wend. 360; Vice Chancellor McCoun, 1835, Craig v. Hone [Edw. Ch. 554]), it is unnecessary for me to go further than to add, that on a careful perusal of the English cases supposed to sustain the doctrine advanced in the court of errors (1 Vern. 399; 1 P. Wms. 445; 2 Atk. 477, 600; 3 Atk. 352–356; Amb. 79; 2 Cox, 235; Amb. 596), every one of them, in my judgment, turns upon points of jurisdiction wholly independent of the principle put forth in Hadden v. Spader [supra], some ingredient of fraud, of trust, or impediment to the running of an execution, or necessity for discovery, supplying in each of them matter pertaining to the cognizance of chancery. The case of Taylor v. Jones, 2 Atk. 600, referred to by Judge Story as the strongest in support of the doctrine declared in Hadden v. Spader, was the case of a fraudulent settlement by a debtor on his own family. 1 Story, Eq. Jur. 362, note. It is to be observed that the settlement was aside in favor of general creditors, and that no peculiar equity on behalf of a judgment creditor is recognized by the court in that decision. Such also was the character of the case of Stileman v. Ashdown,

2 Atk. 477, and the general question was decided by Lord Hardwicke adverse to the maintenance of such bills, though relief in that form may be yielded under peculiar equities, and, as in the last case, in furtherance of some special statute.

The present chancellor of this state was plainly of opinion that the jurisdiction of the court would not, without aid of the statute, give an execution creditor relief against property not liable to execution, or prevent the judgment debtor collecting his own debts when application to the court was unsupported by any ingredient of fraud or injustice. 9 Cow. 724. It seems to me the very nature and object of bills of this character show that they must act within the sphere indicated. A judgment creditor has no claim, because of the quality of his debt, to the interference of chancery. All debts take like rank in equity, and the principles which will found a jurisdiction to enforce here payment of a judgment, equally cover every other class of debts, and authorize its employment for their collection. This is the clear doctrine of the English decisions. 2 Atk. 477, 600; 2 Cox, 235; Amb. 596. Creditors' bills, therefore, are not suits for the collection of debts, but emphatically in aid of the execution at law. The execution should do the office, and would perform it but for some occurrence which demands the interposition of chancery to give the execution its legitimate effect. All the cases rest upon this doctrine. Chancery cannot be appealed to until the creditor has faithfully exhausted all his remedies at law. 1 Madd. 206. And it may admit of question whether the relief should go further than to bring property already under lien by the judgment or execution in a state to be levied on and appropriated. U. S. v. Sturges [supra]. This necessity demonstrates the reason and limits of the jurisdiction, that it is to be called in when execution at law would have afforded the required remedy, but for some wrongful act of the party defeating its operation. The argument that a creditor has not an adequate remedy at law where the debtor's property is not tangible, but consists in choses in action or debts owing him, furnishes no cause for the interposition of chancery that did not always exist at common law.

The entire remedy ever allowed judgment creditors at law obtains now in this court; the sequestration of all visible property, and the right of imprisonment to coerce the production of property which an execution cannot reach. Chancery is not to be appealed to, to take original cognizance in the mere collection of debts, but as an auxiliary to courts of law, to help out process where it would supply every needful remedy if its course were not intercepted or defeated by some inequitable act of the party directly connected with its operation. The object of the present bill, which is to enjoin two of the defendants from collecting the judgment debt

due them from the other, and probably, further, to compel payment of that judgment to the complainant, cannot, in either aspect, prevail in this court. Injunction accordingly denied.