PHILANDER J. MALLORY

*v.*

ANDREW KIRKPATRICK.

1. A corporation organized under the laws of this state, which is in an insolvent condition, cannot prefer, as a creditor, one of its officers.

2. The president of a corporation in an insolvent condition, who is also its creditor to a large amount for cash advanced, brought suit against it on one day, resigned as president and director the next day, and on the third day the directors accepted the resignation and authorized an attorney to give a *cognovit*, upon which judgment was at once entered.—*Held*, that the creditor could not have a preference by virtue of such a judgment.

3. Other judgments had been recovered by outside creditors against the corporation, in due course, shortly before the judgment by *cognovit*, and under these, all the property of the corporation was sold, leaving a surplus, which was paid by the sheriff to the ex-president under his judgment by *cognovit*. Subsequently, another creditor brought suit and recovered judgment, and filed his bill against the ex-president, praying that he be decreed liable to pay his judgment out of the surplus in his hands.—*Held*, (1) that the ex-president held the money so received in trust for all the creditors; (2) that they could not be reached by the latter judgment creditor for his own benefit, under the eighty-eighth and subsequent sections of the Chancery act; (3) that they could be reached by a receiver appointed for the benefit of all the creditors.

4. Corporations are not liable to be proceeded against under the eighty eighth and subsequent sections of the Chancery act.

Mallory v. Kirkpatrick.

This is a contest between two judgment creditors of the Newark Bark Company, a private corporation organized under the general act. The judgment of the defendant was entered on the 13th day of June, 1894, for upwards of $15,000. Upon it execution was promptly issued and all the property of the defendant corporation levied upon, sold and purchased by the defendant. The sale was made not only under the defendant's judgment, but also under two other judgments previously recovered against the corporation, and the property produced a sufficient amount to pay the previous judgments and several hundred dollars on that of the defendant.

About the time that the sale took place complainant brought an action upon his claim against the corporation, and obtained judgment by default on the 3d of October, 1894, for $605.85.

The prayer of the bill is that the judgment recovered by the defendant may be declared to be fraudulent and void as against the complainant, and that the property, real and personal, sold under it to the defendant may be decreed to be subject to the lien of the complainant's execution, and the sale under the previous judgment set aside, or, in the alternate, that the defendant pay the complainant's judgment out of the proceeds of the sale which would otherwise go to satisfy his own judgment.

The defendant was, from the organization of the corporation and up to the 12th of June, 1894, one of its directors and its president. On the day last named it was indebted to him in about the sum of $7,500 for money advanced to it, and he was an endorser on its notes for about $7,500 more. The company was hopelessly insolvent, and two judgments, amounting to about $3,000, had already been recovered against it. On the 11th of June he commenced suit against the company, and on the 12th he resigned as president and director. At a meeting of the remaining directors, held on the 13th, his resignation was accepted, and his son, Andrew Kirkpatrick, Jr., was elected a director in his place, and then, by a resolution of the board, an attorney of the supreme court, who was present, was authorized and directed to consent to a judgment in favor of the defendant in his suit just commenced. Immediately after

Mallory *v.* Kirkpatrick.

receiving this authority the attorney signed a *cognovit actionem*, and judgment was at once entered in the defendant's favor against the company, for $15,000 and upwards. There is no dispute but that the whole amount was due.

*Mr. Thomas N. McCarter, Jr.,* for the complainant.

*Mr. Philemon Woodruff,* for the defendant.

PITNEY, V. C.

The complainant attacks the defendant's judgment on two grounds—*first,* he alleges and proves that his claim was due and should have been paid in the fall of 1893, and that it was placed by him in the hands of an attorney for collection, who called upon the defendant and upon one of the directors, who appeared to be active in managing the financial affairs of the company, and demanded payment; that they both told him that the company was in financial difficulties, and that it was trying to pay its debts, and they thought it would be able to do so if the creditors gave them time. The defendant also stated to the complainant's attorney that the corporation was largely indebted to him, and if the creditors attempted to force payment he should attempt to secure himself. On the strength of this statement complainant's attorney accepted part payments on the amount due, and took notes of the company for the balance. This was done on one or two occasions before the final collapse, part of the amount due being paid in each instance.

The precise point made by the complainant is that there was what amounted to a contract between him and the defendant as president of the company, that so long as the complainant granted renewals in part payment of his debt the defendant would not take measures to secure himself.

I think the evidence entirely fails to sustain the point. What the defendant promised was that if all the creditors forebore to sue, the company would try to pay them all. This condition was not fulfilled. Two of them did sue, and obtained judgment and execution.

The second point relied upon by the complainant requires more careful consideration. It is that the corporation, being insolvent, had no right to prefer the defendant, who was its president, as its creditor; and he relies upon the very recent case of *Montgomery* v. *Phillips, 8 Dick. Ch. Rep. 203*, and upon *Sutton Manufacturing Co.* v. *Hutchinson, 63 Fed. Rep. 496*.

Against this defendant relies upon *Wilkinson* v. *Bauerle, 14 Stew. Eq. 635*, and takes the additional ground that complainant has no standing in court to attack the judgment of defendant for his own benefit alone, but that it can only be done either by a receiver in insolvency, as in *Montgomery* v. *Phillips*, or by a bill in which complainant asks relief for himself and all other creditors who may come in and ask a benefit under the decree.

Before considering this question it is proper to notice a further technical objection made by the defendant, viz., that the corporation should have been made a party. It seems to me that the point is well taken, and that without the corporation in court the complainant's proceedings are defective. But as that is a matter which may be remedied by amendment, I will proceed to consider the merits.

I am unable to reconcile the case of *Wilkinson* v. *Bauerle* with that of *Montgomery* v. *Phillips*. The former case distinctly avows the doctrine (*14 Stew. Eq. 643, 644*) that an insolvent incorporated company may prefer its creditors generally, not excluding its president or other officers; and in that case one of the creditors preferred was the president of the company. In *Montgomery* v. *Phillips*, as I read it, the contrary doctrine is established; and it was distinctly held, upon review of all the authorities, that a corporation in an insolvent condition could not prefer one of its creditors who was an officer of the company, and a chattel mortgage given for that purpose was set aside at the suit of a receiver appointed by this court. At the same time an assignment of choses in action to a creditor-at-large, not an officer or stockholder, was sustained, though made when the company was insolvent.

The bill in *Wilkinson* v. *Bauerle* was exhibited by a creditor who sued for himself and all others who might come in. That

in *Montgomery* v. *Phillips* was exhibited by a receiver appointed by this court. This difference is not material, because the object of the bill in both cases was precisely the same, viz., to bring about an equal distribution of the assets of the corporation among its creditors.

In addition to the direct bearing upon this case of the decision of the court of errors and appeals in *Montgomery* v. *Phillips*, there is the eightieth section of the Corporation act, which declares that the funds of a corporation

"shall be distributed among the creditors proportionally to the amount of their respective debts, excepting mortgage and judgment creditors when the judgment has not been by confession for the purpose of preferring creditors."

A judgment by confession for the purpose of preferring a creditor is expressly excepted by Justice Magie in his opinion in *Wilkinson* v. *Bauerle.*

It is urged by the counsel for the defendant that his is not a judgment by confession, but I cannot adopt that view. The suit was commenced by a summons and declaration on the 11th of June, the defendant's resignation was dated on the 12th, the directors met on the 13th and accepted the resignation and elected his son a director in his place, and then authorized an attorney to consent to a judgment against the corporation, which the attorney did by an ordinary plea called a *cognovit,* in which it acknowledges that the defendant did undertake and promise as the plaintiff in its declaration has alleged, and that it cannot deny that it owes and unjustly detains from the plaintiff the sum claimed by him in his declaration, and consents that judgment be entered against it for the sum of $15,324.05. Now, if that is not a judgment by confession, I am unable to understand what a judgment by confession is. It is the ordinary form found in the books of precedents of a *cognovit,* and a *cognovit* is a confession. Its effect in hastening the judgment was precisely the same as if the corporation had executed a bond with a warrant of attorney to confess judgment. The judgment's contention that the language in the eightieth section of the Corporation act—"when the judgment has not been by confession for the

purpose of preferring creditors"—applies only to judgments by bond and warrant of attorney, cannot be maintained. The common-law practice of entering judgment upon *cognovit actionem* is old and well established, and a judgment so entered has always been known as a judgment by confession. *Stewart* v. *Walters, 9 Vr. 274,* and cases there cited.

But the defendant's counsel further contends that this judgment was not confessed for the purpose of preferring his client. If it was not for that purpose, then I am unable to imagine for what purpose it could have been done. Two judgments were entered against the company, aggregating over $3,000, on the 4th of June. The sheriff might, and undoubtedly would, proceed immediately to sell under them. If the property brought more than the amount of these judgments the surplus would, in the then condition of affairs, be paid to the company. The entry of these prior judgments made it possible and easy for any creditor, or any one of the stockholders of the company, to apply at once to the chancellor for a receiver and an injunction against any other suits. The result of that proceeding would have been to prevent any preference being made to the defendant. Hence, it is palpable that the object of hastening his judgment was to give him a preference, and that is in accordance with his avowed declarations made to the attorney of the complainant a month before, and he frankly states in his evidence that he gave instructions to the attorney to proceed and secure his debt. And see *Stratton* v. *Allen, 1 C. E. Gr. 229.*

Again, it is urged that the defendant, at the time the judgment was confessed, was not an officer of the company, and therefore he is not within the letter and spirit of the decision in *Montgomery* v. *Phillips.* If his judgment be by confession, for the purpose of giving him preference over other creditors, it is immaterial whether he be an officer or not, since that mode of obtaining preference is forbidden to all creditors, and the language of Vice-Chancellor Van Fleet in *Bissell* v. *Besson, 2 Dick. Ch. Rep. 580,* applies. But I am unable to accede to the view that defendant is not, for the present purposes, to be treated as an officer of the company. I cannot admit that the resignation as

president and director and acceptance thereof, and the confession of judgment, all in one day, was efficient to alter his relations to the company.

I am forced, therefore, to the conclusion that the defendant is entitled to no preference under his judgment against the other general creditors of the corporation.

That brings us to another point taken by the defendant, which is that the complainant's bill is defective in that it does not declare that it is filed on behalf of himself and all other creditors of the corporation; and this is really the troublesome point in the case.

The term "creditors' bill" was originally applied to those bills which were filed by creditors of the estate of a decedent against his personal representatives for the marshaling of the assets and for the payment of the creditors according to their priority, and without any preference among those of equal degree. They were, strictly speaking, bills to administer the estate of the decedent. At the same time, all bills brought by creditors for the purpose of securing their debts are, in one sense, creditors' bills. Thus, a bill to set aside a fraudulent conveyance of land by a debtor to a third party, or to subject to the lien of a judgment land the title to which has been purchased with the funds of the judgment debtor and the title placed in a third party for his benefit, is, in one sense, a creditors' bill. But the term "creditors' bill," as used in the standard treatises, was originally applied to bills for the administering assets of the character just indicated. Such, in effect, were the bills in *Jones* v. *Fairweather*, *1 Dick. Ch. Rep. 237* (at *p. 248*), though those bills had the additional element of seeking to establish the fraudulent transfer of the property by the deceased in his lifetime to the defendant, his executor. See *Mitf. Pl. *166; Story Eq. Pl. § 99 et seq.* Nevertheless, it is true that in that class of cases one creditor might bring a bill for his own individual benefit without stating that it was for the benefit of all creditors, and if the personal representative admitted sufficient assets to pay all the debts, a decree would go at once in favor of the complainant alone. *1 Dan. Ch. Pr. *235, *236.*

But if, on the contrary, the personal representative denied sufficient assets, the result was a decree simply for an ascertainment of the value of the assets and amount of the debts and an equal distribution among all, so that no priority by one creditor over another could be obtained by such a suit.    For such bills, no preliminary judgment was necessary, precisely as no judgment is necessary here in order to entitle a creditor to institute proceedings in insolvency against a corporation under the seventieth section of the Corporation act.

In creditors' bills, based on the eighty-eighth and subsequent sections of the Chancery act, which provides a mode of reaching choses in action, a creditor is not obliged, directly or indirectly, to sue for the benefit of all the creditors, although he may do so, and however he frames his bill, he obtains a preference and priority of lien by filing his bill and getting his order. *Whitney* v. *Robbins, 2 C. E. Gr. 360, 363.* Such is the rule in New York, under a statute from which our first statute was copied. *Corning* v. *White, 2 Paige 567; Parmelee* v. *Egan, 7 Paige 610.*

Notwithstanding what was said by Mr. Justice Dalrimple, in his judgment in *Tantum* v. *Green, 6 C. E. Gr. 364,* I must take it that the rule is as stated by Chancellor Zabriskie, sitting as master, in *Whitney* v. *Robbins,* that in the absence of fraud this court would not, before the legislation just referred to, aid a judgment creditor to obtain payment out of any particular assets of a chattel nature not subject to levy.    See *Willard Eq. Jur. 237, 238; Donovan* v. *Finn, 1 Hopk. Ch. 59.*

The property sought to be reached in this case is not land or leviable chattels, for before suit brought by complainant the property of the defendant corporation had been sold under valid judgments and executions other than that of the defendant, and the only effect of the defendant's judgment was to give him the proceeds of the sale of the company's property over and above enough to pay those prior judgments.    This surplus came into the hands of the defendant lawfully.    His judgment was a lawful and valid judgment.    He had a right to sue the company, and to obtain judgment as soon as he could; but he had no right to make use of that judgment, when obtained by confession, to gain

a preference over other creditors. As to creditors he holds what he so obtained in trust for their equal benefit.

The defendant, then, is lawfully in possession of the assets of the corporation, as a trustee for all its creditors, and I am unable to see how the complainant is able to reach the funds in his hands under the provisions of the eighty-eighth and following sections of the Chancery act. That act clearly applies only to natural persons as defendants who may be called upon to be examined under oath, and has no application to a corporation.

As a bill to appropriate to himself exclusively an asset of the defendant corporation, I think the complainant's bill fails.

The question remains whether or not it can be made available for any purpose. The clear policy of our Corporation act is that the assets of an insolvent corporation should be equally divided among its creditors. Its assets are to be administered in that regard like those of a decedent, and I am of the opinion that the only ground upon which the complainant's bill can be maintained, is that it is a bill in the nature of a creditors' bill against the estate of a decedent to administer the estate of an insolvent corporation. Such a bill was maintained in *Wilkinson* v. *Bauerle*.

If, then, the complainant is willing to amend by making the corporation a party and framing his bill for the benefit of all the creditors, I think he may be entitled to a decree declaring that the surplus brought by the property over and above a sufficient amount to pay the prior judgments shall be held by the defendant in trust for the benefit of all the creditors. But in order to have the benefit of such a declaration, it seems to me that it is proper, if not necessary, that a receiver should be appointed. Whether the defendant should account for any profit he may have made upon his purchase of the company's property, can be considered after such appointment.