Laurence B. HOWARD, Jr., Petitioner
(and Respondent),

v.

UNITED STATES of America,
Respondent (and Petitioner)

and

William F. Howard, Trustee, Respondent.

Supreme Court of Tennessee.

April 24, 1978.

Rehearing Denied June 5, 1978.

Maclin P. Davis, Jr., Elliot Warner Jones, Waller, Lansden, Dortch & Davis, Nashville, for Laurence B. Howard, Jr.

William F. Howard, Trustee, pro se.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Crombie J. D. Garrett, Carleton D. Powell, Dept. of Justice, Washington, D. C., Hal D. Hardin, U. S. Atty., Nashville, for United States.

## OPINION

HENRY, Chief Justice.

In this action of interpleader, the principal inquiry is whether the income from a spendthrift trust is subject to a lien for the payment of federal taxes.

The last will and testament of Laurence B. Howard established a residuary trust with his two sons, Laurence B. Howard, Jr. and William Felder Howard, designated as income beneficiaries, with income payable quarterly during their respective lives, and with the trust being terminated upon the death of the survivor. Item VI(m) reads, in pertinent part, as follows:

> [N]either the principal nor the income of the trust estates shall be liable for the debts of any beneficiary nor shall the same be subject to seizure by attachment, garnishment or execution, nor by any writ of proceeding at law, in equity, in bankruptcy or receivership; nor shall the beneficiaries thereof have the right or power to sell, assign, transfer, pledge, mortgage or in any other manner encumber or anticipate or dispose of their interest in the trust estates or in the income therefrom.

All parties agree, and we hold, that this language operates to create a spendthrift trust.

It should be emphasized that the income beneficiaries do not have the legal title to the corpus of the trust estate, nor do they have any right to the use or possession of any part of the corpus. They are purely income beneficiaries.

On September 24, 1974, the Nashville District of the Internal Revenue Service served upon William F. Howard, as trustee, a Notice of Levy reciting an indebtedness in the sum of $27,068.95 owed by Laurence B. Howard, Jr., for federal taxes.

Petitioner, Laurence B. Howard, Jr., disputes the entitlement of the Internal Revenue Service to levy upon the trust proceeds and makes other defenses to the claim.[1]

The Chancellor, after a full evidentiary hearing, concluded that the federal tax lien attached to the trust income while in the hands of the trustee. The Court of Appeals "affirm[ed] the abstract legal conclusion of the Chancellor that the Federal Government is entitled to attach income from a spendthrift trust in spite of Tennessee Decisions and Statute" but declined to affirm the Chancellor's award in favor of the government on the basis of its view that the evidence necessary to document the government's claim was not competent.

### I.

*Is the income from a spendthrift trust subject to seizure in satisfaction of a federal tax lien?*

We respond to the captioned question in the affirmative and thus affirm both the Chancellor and the Court of Appeals as to this phase of the controversy. We specify our reasoning in some detail in view of the fact that there are no guiding precedents under Tennessee decisional law.

---

1. Simultaneously with the filing of the Complaint, the trustee tendered into the registry of the court all funds in his hands belonging to Laurence B. Howard, Jr., and has since paid into court all sums due him when and as income has accrued. The total so deposited as of the date of the hearing in Chancery Court was approximately $28,000.00.

At first blush the answer would appear to be determined by Section 26–601, T.C.A., which reads as follows:

26–601. *Grounds for discovery and subjection* —The creditor whose execution has been returned unsatisfied, in whole or in part, may file a bill in the chancery court against the defendant in the execution, and any other person or corporation, to compel the discovery of any property, including stocks, choses in action, or money due to such defendant, or held in trust for him, except when the trust has been created by, or the property so held has proceeded from some person other than the defendant himself, and the trust is declared by will duly recorded or deed duly registered. Provided, however, that where the state of Tennessee shall be such judgment creditor, the chancery court shall have jurisdiction to subject such property to the satisfaction of the claims of the state, despite the fact that the trust has been created or the property so held has proceeded from some person other than the defendant himself and the trust declared by will duly recorded or deed duly registered.

The history of this statute is simultaneously significant and interesting. In 1831 Tennessee abolished imprisonment for debt.[2] As stated in 35 *Tennessee Law Review* 319, at 320, "[a]lthough this was entirely in keeping with the moral sense of Tennesseans at the time, it did have the effect of eliminating a part of the plaintiff's remedy at law."

While the decisions are conflicting, the case of *Erwin v. Oldham*, 14 Tenn. 185 (1834) (decided under the law as it existed prior to the adoption of Chapter 11, Public Acts of 1832), is clear authority for the proposition that in the absence of fraud, the court has no power to subject "stocks, credits, and rights of action" held by a debtor to the satisfaction of his indebtedness. The Court specifically relied upon the New York case of *Donovan v. Finn*, 1 Hopk. Ch. 59, 14

Am.Dec. 531 (N.Y.1823), as "conclusively settling the point."

By Chapter 11, Public Acts of 1832, the Tennessee Legislature enacted a statute patterned after a New York act designed to meet *Donovan*. This statute forms the basis for Sec. 26–601, T.C.A.

Thus within a two-year period, a Tennessee creditor lost the remedy of imprisonment for debt, but gained the right to discover assets in equity and subject them to his demands.

But the equitable remedy was withheld for trust funds when the trust was created by a third person by recorded will or registered deed. This provision breathed the breath of life into spendthrift trusts in Tennessee. The landmark case is *Jourolmon v. Massengill*, 86 Tenn. 81, 5 S.W. 719 (1887).

There the Court, in an opinion by Justice Lurton, held that the 1832 act was "a rule of property, and . . . very many such trusts have been created in reliance upon it." *Id.* at 126, 5 S.W. at 734.

The last proviso of Sec. 26–601, T.C.A., excepts from the application of the statute cases where the state of Tennessee is the judgment creditor. This proviso, with additional language making it retroactive, was adopted by Chapter 108, Public Acts of 1943, in an abortive effort to reach the assets of three spendthrift trusts created for Rogers Caldwell by his parents, in satisfaction of an indebtedness to the state in an amount in excess of four million dollars. This Court, in *State v. Caldwell*, 181 Tenn. 74, 178 S.W.2d 624 (1944), declared the 1943 amendment "invalid insofar as it is retrospective in character." The Court declared that the 1832 act was a rule of property and "not an exemption statute for the benefit of poor debtors."

■ Thus spendthrift trusts are solidly entrenched in our law and it is clear that Sec. 26–601 is a rule of property and not an exemption statute.

---

**2.** Ch. 40, Public Acts of 1831, "An Act to abolish imprisonment for debt except in cases of fraud." This act would be suspect today—it prohibited the imprisonment of female debtors under any circumstances.

If we were dealing solely with Tennessee statutory and decisional law, we would be inclined to hold that the income from spendthrift trusts is insulated against the claims of all creditors, including the Internal Revenue Service; however, such is not the situation.

Article VI, clause 2 of the Constitution of the United States contains the Supremacy Clause:

This Constitution, and the laws of the United States which shall be made in Pursuance thereof; [and all treaties] shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The ensuing paragraph requires that all judges state and federal, "shall be bound by Oath or Affirmation, to support this Constitution."

■ The imposition and collection of federal income taxes are governed by federal laws deriving their validity from the sixteenth amendment to the federal constitution. As a general rule, where there is a conflict between state laws and federal laws, the latter must prevail. *United States v. Dallas National Bank*, 152 F.2d 582 (5th Cir. 1946).

Under 26 U.S.C. Sec. 6321, it is provided that unpaid federal taxes, after demand shall be a lien in favor of the United States upon *all property and rights to property*, whether real or personal, belonging to such person. (Emphasis supplied).

There is no exception in favor of income beneficiaries under spendthrift trusts and most assuredly such income is embraced within the phrase "property and rights to property."

■ This section creates no property rights but merely attaches federally defined consequences to state created rights. *See United States v. Bess*, 357 U.S. 51, 78 S.Ct.

1054, 2 L.Ed.2d 1135 (1958) (construing a similar provision of the Internal Revenue Code of 1939). State law governs the question of the existence of "property" or "rights to property" and the "nature of the legal interest" that the taxpayer has in the property. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

■ Under Tennessee law, it is essential to the creation of a spendthrift trust that (1) legal title be vested in the trustee, (2) the gift to the donee be of an equitable interest in the income, and (3) the trust be active. *Robertson v. Brown*, 13 Tenn.App. 211 (1931). In the instant case these criteria are met; petitioner as income beneficiary has a vested property right in the income generated by the trust.

■ Once we have made the determination that under Tennessee law petitioner owns property or rights to property, federal law takes over for the purpose of determining whether a lien will attach. *United States v. Bess, supra*; *Broday v. United States*, 455 F.2d 1097 (5th Cir. 1972); *United States v. Taylor*, 254 F.Supp. 752 (N.D. Cal.1966).

■ As we have heretofore indicated, we are in full accord with petitioner Howard's position that Sec. 26–601, T.C.A., is not an exemption statute. *See State v. Caldwell, supra.* If it were, the results we reach would be no different. This follows from the established legal proposition that federal law exclusively governs what is exempt from federal taxation. *United States v. Mitchell*, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971).

The lien for federal taxation arises under 26 U.S.C. Sec. 6321 and covers "all property and rights to property." Levy is governed by Section 6331(a), and exemptions are enumerated in Section 6334(a).[3] Section 6334(c) specifically provides that "no property or rights to property shall be exempt

3. This section exempts wearing apparel and school books, fuel, provisions, furniture and personal effects, books and tools of a trade, business or profession, unemployment benefits, undelivered mail and workmen's compensation benefits.

from levy other than the property specifically made exempt by subsection (a)."

The fact that we do not deal with an exemption statute is of no significance. What is significant is the fact that we deal with "property and rights to property." The argument of petitioner Howard is precisely the same as was made by the taxpayer in *Leuschner v. First Western Bank and Trust Company*, 261 F.2d 705 (9th Cir. 1958). The Court responded thusly:

> But the bastion of the claim built up by Leuschner is that he had a property right to receive this income . . . . *It is for the very reason that Leuschner acquires a property right that the government has the power to levy thereon.* (Emphasis supplied). 261 F.2d at 708.

Petitioner Howard relies upon *Meyer v. United States*, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963). But *Meyer* stands for the proposition that state law determines what is "property or rights to property," and generally it is the policy of Congress to recognize and give effect to state exemption laws. This holding was made in the context of the applicability of the doctrine of marshaling assets. The holding is not at variance with the general rule that federal law determines exemptions from federal taxation.

■ The conclusion of the Court of Appeals is fully validated by the cases it cited, notably *United States v. Dallas National Bank, supra* ; *Leuschner v. First Western Bank and Trust Company, supra* ; and *In re Rosenberg's Will*, 269 N.Y. 247, 199 N.E. 206 (1935). We fully agree with petitioner that we are not bound by the decisions of the courts of our sister states nor of the federal system; however, we respect their decisions and are entitled to follow the conclusions reached in any well-reasoned opinion irrespective of source.

We affirm the action of the Chancellor and Court of Appeals and hold that respondent's share of the income generated by the spendthrift trust may be subjected to the payment of federal taxes, assuming a proper levy and the observance of all requisite procedural steps.[4]

## II.

### *The Certificates of Assessments*

The Court of Appeals held that the Certificates of Assessments and Payments were not properly validated or certified under Rule 44.01, Tenn.R.Civ.P., because (1) the signature of the Director of the Internal Revenue Service was affixed thereto by a deputy and (2) there is no provision in Rule 44.01 for certifying a "true extract."

■ We dispose of the latter contention first. Rule 44.01 provides for the proof of an official record "by a copy attested by the officer having the legal custody of the record, or by his deputy." We do not think it even arguable that the right to evidence an official record by the presentation of a certified copy does not carry with it the right to certify pertinent parts of the record. If other parts are germane, our rules contain ample procedures to require their production and inspection.

Under Rule 44.01, Tenn.R.Civ.P., official records, if in the custody of any public official within this state, "may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy." Clearly, under this rule the Certificates of Assessments and Payments could have been certified by Claude A. Kyle, the Director of the Internal Revenue Service Center for the Southeast Region, at Memphis, or by his deputy, Dale Crimpley, Branch Chief of the Certification Branch, who had been designated to sign Kyle's name.

■ The difficulty in this case stems from the fact that the Certificates bear the purported signature of Kyle, affixed by

---

4. Also in accord with the decision of this Court and the Court of Appeals is Sec. 157(d) of the Restatement (Second) of Trusts (1959): "Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary . . . by the United States or a State to satisfy a claim against the beneficiary." See also the Comment on Clause (d).

Crimpley, without any indication that it was so signed. The failure of Crimpley to sign his own name as Branch Chief, and therefore, as Kyle's "deputy," is unexplained in the record. While we view this as incredibly sloppy procedure, under the facts of this case, we hold that these records were admissible.

Not only were the documents certified over an official signature and under an official seal, but also the government presented these records by a senior technician employed at the Memphis Service Center, who testified that they were made under her supervision and personally verified by her. Further, the accuracy of these figures is not challenged. In the last analysis we deal with a formality that should not be permitted to frustrate the orderly reception in evidence of an official record.

### III.

#### Notice of Tax Liens

Two certified notices of tax lien were received in evidence by the Chancellor. Each was certified by the Deputy Register of Davidson County, but neither was acknowledged by an official of the Internal Revenue Service, and neither was witnessed. Instead, they contained a certificate over the signature of a Revenue officer. Below the signature of the Revenue officer appears this notation:

(Note: Certificate of officer authorized by law to take acknowledgments is not essential to the validity of Notice of Federal Tax Lien G.C.M. 26419, C.B. 1950–51, 125.)

The Court of Appeals, relying upon Sec. 64–2201, T.C.A.,[5] held that these notices were not legally registered and were inadmissible in evidence. We disagree.

It is true, as noted by the Court of Appeals, that *Haynes v. State*, 213 Tenn. 447, 374 S.W.2d 394 (1964), stands for the general proposition that an instrument will not be considered legally registered unless acknowledged by the maker or properly witnessed.

 The filing of tax liens in Tennessee is governed by Sec. 64–2110, T.C.A., which reads, in pertinent part, as follows:

Notices of liens for taxes payable to the United States of America and certificates discharging such liens shall be filed in the office of the register of deeds of the county within which the property subject to such liens is situated.

It will be noted that there is no requirement that they be acknowledged or witnessed—merely that they be filed.

This statutory authorization for the filing of tax liens derives its efficacy from federal statutes, since remedies for the collection of federal taxes have "always been conceded to be independent of the legislative action of the States," and the federal statute (now 26 U.S.C. Sec. 6323[f]) "does not purport to permit the States to prescribe the form or the contents of that notice." *United States v. Union Central Life Insurance Co.*, 368 U.S. 291, 293–94, 82 S.Ct. 349, 351, 7 L.Ed.2d 294, 296–97 (1961). In the cited case the Court points out that allowing the respective states to prescribe the form and contents of tax notices would run "counter to the principle of uniformity which has long been accepted practice in the field of federal taxation." *Id.* at 294, 82 S.Ct. at 351, 7 L.Ed.2d at 297. See also *Atlas Finance Co. v. Wilkerson*, 214 Tenn. 619, 382 S.W.2d 529 (1964).

 Further, as held in *United States v. Estate of Donnelly*, 397 U.S. 286, 294, 90 S.Ct. 1033, 1038, 25 L.Ed.2d 312, 319 (1970):

Acts of Congress are generally to be applied uniformly throughout the country from the date of their effectiveness onward.

Controlling federal law relating to form and contents is contained in 26 U.S.C. Sec. 6323(f)(3):

---

5. Sec. 64–2201, T.C.A., provides:
 To authenticate an instrument for registration, its execution shall be acknowledged by the maker, or proved by two (2) subscribing witnesses, at least.

528

The form and content of the notice referred to in subsection (a) shall be prescribed by the Secretary. Such notice shall be valid *notwithstanding any other provision of law* regarding the form or content of a notice of lien. (Emphasis supplied).

■ The place of filing personal property liens is governed by 26 U.S.C. Sec. 6323(f)(1)(A)(ii), which provides that the notice shall be filed "in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated." Sec. 64–2110, T.C.A. is Tennessee's designation. Notices so filed must meet the requirement of federal law. We hold that such notices need not be acknowledged or witnessed.

Finally, it is the declared purpose of Sections 64–2110—64–2115, T.C.A., to "authoriz[e] the filing of notices of liens in accordance with the provisions of Sections 6321–6326 of the United States Internal Revenue Code of 1954, and any acts or parts of acts of Congress amendatory thereof." Sec. 64–2114, T.C.A. This section points unerringly to federal law and by that law we are bound.

There is for further consideration the fact that the lien imposed by Sec. 6321 arises at the time the assessment is made; and, therefore, unlike other liens its perfection does not depend upon its recordation. *In re DeKalb Avenue Reconstruction, Borough of Brooklyn, City of New York,* 11 A.D.2d 240, 205 N.Y.S.2d 125 (1960), *aff'd mem.,* 12 N.Y.2d 1051, 239 N.Y.S.2d 880, 190 N.E.2d 240 (1963).

### IV.

#### The Specific Claims

This suit involves two claims, asserted by the government. One of them was based on petitioner's ownership of Harding at Harding Car Wash; the other on his status as a responsible officer of Roman International, Inc. Involved were unpaid Withholding and Federal Insurance Contribution Act (FICA) taxes. Separate notices of tax liens were filed in the Register's office of Davidson County on May 30, 1974. A notice of levy was served on the Trustee on September 24, 1974, and prior demand had been made upon the Petitioner.

■ There is a presumption that tax assessments are valid and the burden is on the taxpayer to prove that they are erroneous. *United States v. Rexach,* 482 F.2d 10 (1st Cir. 1973). We agree with the Chancellor that there is no such proof in the record. Actually the taxpayer agreed to the assessment against Roman International. We concur in all factual findings made by the Chancellor and in the conclusion he reached.

### V.

#### Conclusion

■ The taxes in question were due and unpaid; assessments were legally made; the taxpayer had actual notice of the claim and demand for payment had been made; notices of liens were seasonably filed. We find nothing in this record that would justify giving relief to this taxpayer. Absent a bona fide dispute as to tax liability, we do not look with favor upon technical objections which, if sustained, would frustrate the government in the collection of tax revenues. This record does not reflect a bona fide defense to the claims asserted by the government.

This action is remanded to the Chancery Court at Nashville for the entry of a final order containing the current amount of the tax liability and such other matters as may be appropriate. The judgment heretofore entered in chancery will bear interest at the legal rate. All costs—both those in the trial court and those incident to this appeal—will be taxed one-half to the United States of America and one-half to the Petitioner. The entire judgment and Petitioner's share of the court costs are payable out of the income of the trust estate.

FONES, COOPER and HARBISON, JJ., concurring.

BROCK, J., dissenting.

BROCK, Justice, concurring in part, dissenting in part.

I concur in the opinion of the Court in all respects, except its determination that income from a Tennessee spendthrift trust is subject to a federal tax lien.

The United States Supreme Court has made it clear, I think, that federal law does not create any property rights or determine the nature, attributes, or quality of property rights of a taxpayer; instead, it has left that determination to the several states. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); *Morgan v. Commissioner of Internal Revenue*, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940).

I also think it clear, as stated in the majority opinion, that under Tennessee law the interest of a beneficiary of a spendthrift trust is of such a *nature* and *quality* that it may not be alienated either voluntarily by the beneficiary-debtor or involuntarily by his creditors; inalienability is an attribute of such an interest. *State v. Caldwell*, 181 Tenn. 74, 178 S.W.2d 624 (1944). Therefore, such a beneficiary, as a debtor for taxes owed to the United States, does not, insofar as his trust interest is concerned, own any property or rights to property within the terms of 26 U.S.C. § 6321. It is not a matter of such a beneficiary having property which is exempt from the claims of creditors; rather, he simply has never received from the settlor of the trust any right which he may alienate or which may be taken from him.

The question here presented is not answered merely by finding, as does the majority, that the debtor-taxpayer owns property or rights to property; it is necessary to go further and ascertain the *nature* of such property or rights, i. e., whether it is alienable by the taxpayer. In my view, the *Aquilino* decision clearly shows that this determination is one to be made by state courts based upon state law; it is not determined by federal statutes and the supremacy clause of the Constitution has no application.

In *Aquilino, supra*, the taxpayer was a general contractor. The government asserted its tax lien against an indebtedness allegedly owed by a property owner to the general contractor. A dispute concerning the nature and extent of the interest of the taxpayer-contractor ensued. Certain subcontractors, who had performed work on the job, asserted that the money actually received by the contractor-taxpayer and his right to collect amounts still due under the construction contract constituted a direct trust for the benefit of sub-contractors, and that the only property rights which the contractor-taxpayer had in the trust were to bare legal title to any money actually received and a beneficial interest in so much of the trust proceeds as remain after the claims of sub-contractors should be settled. The Federal Government, on the other hand, claimed that the New York State Lien Law merely gave sub-contractors an ordinary lien, and that the contractor-taxpayer's property rights encompassed the entire indebtedness of the owner under the construction contract. In dealing with this problem, the Supreme Court said:

"The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is *whether and to what extent* the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the *nature of the legal interest* which the taxpayer had in the property . . . sought to be reached by the statute.' *Morgan v. Commissioner [of Internal Revenue]*, (citation omitted). Thus, as we held two Terms ago, Section 3670 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law . . .' *United States v. Bess*, (citation omitted). However, once the tax lien has attached to the taxpayer's state-created interest, we enter the province of federal law, which we have consistently held de-

termines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.' (Citations omitted.) The application of state law in ascertaining the taxpayer's property rights and of federal law in reconciling the claims of competing lienors is based both upon logic and sound legal principles. This approach strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interests of its citizens, and the necessity for a uniform administration of the federal revenue statutes." (Emphasis added.)

The Supreme Court continued:

"This conflict [regarding the nature of the contractor-taxpayer's interest] should not be resolved by this Court, but by the highest court of the State of New York. We cannot say from the opinion of the Court of Appeals that it has been satisfactorily resolved. We find no discussion in the court's opinion to indicate the *nature* of the *property rights* possessed by the taxpayer under state law. Nor is the application to be made of federal law clearly defined. We believe that it is in the interests of all concerned to have these questions decided by the state courts of New York. We therefore vacate the judgment of the Court of Appeals, and remand the case to that court so that it may ascertain the property interests of the taxpayer under state law and then dispose of the case according to established principles of law." (Emphasis added.) 80 S.Ct. at 1280, 1281.

I therefore conclude that Tennessee is free to determine the nature and quality of the interest of a beneficiary under a Tennessee spendthrift trust; that for more than 150 years it has been the law of Tennessee as shown by *State v. Caldwell, supra,* and other decisions of this Court and by T.C.A., § 26–601, that such a beneficiary has no interest which may be alienated either voluntarily or involuntarily and thus is of a nature and quality which cannot be reached by creditors, even the United States government. Accordingly, I respectfully dissent from that portion of the majority opinion which is to the contrary.

## OPINION ON PETITION TO REHEAR

HENRY, Chief Justice.

This cause is before the Court on the petition of Laurence B. Howard, Jr., for a rehearing.

Petitioner charges the Court with error in holding that the "Certificates of Assessments and payments were inadmissible"; [1] that the taxes in question were due; that the assessments were legally made; and that judgment should be entered. The basis of these insistences is that these holdings were not made pursuant to any assignment of error. We respectfully disagree.

In the first two assignments petitioner asserts that "there is no competent material evidence to support a finding that petitioner was liable for taxes." This, along with insistences made in the respective briefs of counsel and oral argument made at the bar of the Court, required us to look to the evidence.

The basic issue in this controversy was whether the income from a spendthrift trust is subject to a lien for the payment of federal taxes. A secondary issue was the amount of the federal tax liability.

After we had determined that the Chancellor and the Court of Appeals correctly decided the primary issue, orderly consideration of the case required that we decide whether the government was entitled to judgment. In making this determination, we considered the admissibility of the Certificates of Assessments and the validity of the notices of tax liens. An orderly and efficient disposition of these matters was indispensable to a resolution of this controversy.

The petition to rehear is respectfully denied.

All concur.

---

1. We actually held them to be admissible.