IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 18, 2021 Session

## MICHAEL A. CRESS ET AL. v. TENNESSEE STATE BOARD OF EQUALIZATION ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 195482-1        John F. Weaver, Chancellor**

_____

**No. E2021-00093-COA-R3-CV**

_____

This action involves the valuation of thirty-two unimproved parcels of real property for taxation purposes. The property owners appealed the values assigned by the Knox County Assessor of Property to the Knox County Board of Equalization, the Tennessee State Board of Equalization, and the Tennessee Assessment Appeals Commission before filing a petition for judicial review in the Knox County Chancery Court ("trial court"). The trial court affirmed the respective values of the parcels as found by the Tennessee Assessment Appeals Commission. The property owners have appealed the trial court's determination. Discerning no reversible error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Wayne R. Kramer and Bruce E. Fitzgerald, Knoxville, Tennessee, for the appellants, Michael A. Cress and Park Place Land Holdings, LLC.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and R. Mitchell Porcello, Senior Assistant Attorney General, for the appellees, Tennessee State Board of Equalization and Assessment Appeals Commission.

Charles F. Sterchi, III, Chief Deputy Law Director, Knox County, Tennessee, for the appellees, Knox County, Tennessee, and John R. Whitehead, Knox County Assessor of Property.

**OPINION**

## I. Factual and Procedural Background

On March 15, 2018, Michael A. Cress and Park Place Land Holdings, LLC (collectively, "Taxpayers"), filed a petition in the trial court, seeking judicial review of an action taken by the Tennessee State Board of Equalization ("the State Board") and the Tennessee Assessment Appeals Commission ("the AAC"). Petitioners also named as respondents Knox County, Tennessee ("Knox County"), and John Whitehead, Knox County Assessor of Property ("Assessor") (collectively, "Respondents"). In their petition, Taxpayers alleged that Mr. Cress held title to certain lots in the Park Place of Farragut Subdivision in Knox County and that Park Place Land Holdings, LLC, held title to other lots in the same subdivision, with Taxpayers collectively owning thirty-two unimproved lots. The record demonstrates that Mr. Cress is an owner of Park Place Land Holdings, LLC.

Taxpayers averred that they had timely appealed their 2012 tax assessments to the Knox County Board of Equalization ("the County Board") and also to the State Board such that a hearing was conducted before a state administrative law judge on April 3, 2013. According to taxpayers, although the administrative law judge reduced the values of Taxpayers' lots from that set by the County Board, he nonetheless established values for the lots that exceeded their fair market value. Taxpayers stated that they also had appealed the 2013 assessment values, which were greater than the 2012 values determined by the administrative law judge. Taxpayers' appeals were later consolidated for hearing before the AAC, and an appeal of the 2014 tax assessments subsequently was added as an amendment.

According to Taxpayers, their appeals concerning tax years 2012 through 2014 were heard by the AAC on September 11, 2014. The AAC rendered a decision on November 4, 2014, affirming the earlier valuations and dismissing Taxpayers' appeals. Taxpayers then filed a petition for judicial review of the AAC's determination on March 2, 2015, in the trial court. Following a hearing conducted on February 3, 2016, the trial court entered a final order on November 18, 2016, with an attached and incorporated memorandum opinion. In its order, the trial court found that Taxpayers had presented substantial proof concerning the values of the subdivision lots and that the AAC's dismissal of Taxpayers' appeals was "made upon unlawful procedure" and constituted an "arbitrary and unwarranted exercise of discretion." The trial court therefore set aside the AAC's order and remanded the matter to the AAC for further hearing.

The AAC conducted a second hearing on September 13, 2017. Taxpayers claimed that they presented evidence of the valuation at $13,348 per lot based on a "Discounted Cash Flow Valuation Analysis." By contrast, Knox County presented evidence of lot

values ranging from $15,000 to $70,000 based on the comparable sales method.[1] Taxpayers contended that the discounted cash flow method of valuation was required by applicable law and supported by various treatises as well as prior decisions of the State Board. The AAC, in a split decision, ultimately adopted the values presented by Knox County as "more persuasive" despite acknowledging that the discounted cash flow method was a valid appraisal method.

In their petition, Taxpayers sought judicial review of the AAC's second decision, entered on December 5, 2017, and the resultant Official Assessment Certificate. Taxpayers alleged that the Official Assessment Certificate was a final agency decision reviewable by the trial court pursuant to Tennessee Code Annotated § 4-5-322. Knox County and Assessor subsequently filed an answer, denying that Taxpayers were entitled to any relief and urging that the AAC's decision should be affirmed. The State Board filed the administrative record with the trial court, spanning several volumes of the appellate record.

Following the filing of trial briefs by both sides, the trial court conducted a hearing on November 15, 2019. During the hearing, the court heard testimony from Barry Mathis, Deputy Assessor for the Knox County Assessor of Property, and also received various exhibits. The court then considered oral arguments of counsel before taking the matter under advisement.

On December 31, 2020, the trial court concomitantly entered both a memorandum opinion and a final order affirming the AAC's determination concerning the values of the subject lots. In its memorandum opinion, the court recognized that the proper standard of review to be applied during judicial review of the AAC's determination was "critical." The court contrasted the standard of judicial review contained in the statutes applicable to tax proceedings with the standard of review generally applicable to judicial review of an administrative decision. Specifically as to tax proceedings, the court considered Tennessee Code Annotated § 67-5-1511 (2018) and its provision of a "new hearing" before the trial court based on the administrative record and "additional or supplemental evidence." In contrast, Tennessee Code Annotated § 4-5-322 (2021) of the Uniform Administrative Procedures Act ("UAPA") precludes the trial court from substituting "its judgment for that of the agency as to the weight of the evidence on questions of fact." *See Willamette Indus., Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142 (Tenn. Ct. App. 1999), *perm. app. denied, recommended for publication* (Tenn. Feb. 17, 2000); *Dooly v. Tenn. State Bd. of Equalization*, No. E2012-01022-COA-R3-CV, 2013 WL 1799962 (Tenn. Ct. App. Apr. 29, 2013).

---

[1] Taxpayers argue that Knox County actually utilized different valuation methods for the lots at different times. We note that the appellate record reveals that at the September 2017 hearing, Assessor presented values for the subject lots ranging from $15,000 to $45,000 each.

In doing so, the trial court noted: "It is unclear as to how a reviewing trial court could conduct a new hearing and consider 'any additional or supplemental evidence which either party wishes to adduce relevant to any issue' but be limited to reviewing whether there is substantial and material evidence to support the Board's decision." The court ultimately concluded that "*de novo* review, as generally known, is not proper for judicial review of decisions from [the State Board] or [the AAC] and that judicial review is limited to that permitted by the APA."

After describing and analyzing the evidence, the trial court explained in its memorandum opinion:

> This court is unable to substitute its judgment for that of [the State Board]. The question boils down to whether the record furnishes a reasonably sound basis for the Board's decision and whether a reasonable mind could accept the Board's conclusion that the sales comparison approach is the appropriate method for valuing the property. Within the limited scope of judicial review as set out in the *Willamette* case, this Court has little leeway but to affirm [the State Board].

Taxpayers timely appealed.

## II. Issues Presented

Taxpayers present the following issues for our review, which we have restated slightly:

1.  Whether the trial court erred in determining that "neither side introduced any additional or supplemental evidence at the hearing" before the trial court.

2.  Whether the trial court erred in its application of the proper standard of review.

3.  Whether the trial court erred by affirming the AAC's determination because it was purportedly contrary to applicable law and was not supported by substantial and material evidence.

The State Board and the AAC restate the overarching issue as follows:[2]

---

[2] We note that Knox County and Assessor did not include a statement of the issues in their joint appellate brief.

4. Whether the trial court correctly affirmed the valuation of the real property at issue based on the comparable sales method.

## III. Appellate Standard of Review

The standard of review of an administrative agency's decision following a contested proceeding is the same in the appellate court and the chancery court. *See Terminix Int'l. Co., L.P. v. Tenn. Dept. of Labor*, 77 S.W.3d 185, 191 (Tenn. Ct. App. 2001); *Dooly*, 2013 WL 1799962, at *4; *Am. Heritage Apartments, Inc. v. Bennett*, No. M2003-02595-COA-R3-CV, 2005 WL 1996623, at *4 (Tenn. Ct. App. Aug. 18, 2005). Questions of fact are thus reviewed upon a standard of substantial and material evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5)(A); *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999)). As this Court has previously explained, "what amounts to 'substantial and material' evidence provided for in T.C.A. § 4-5-322(h) is not clearly defined. It is generally understood that 'it requires something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Gluck*, 15 S.W.3d at 490 (quoting *Wayne Cty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)).

When the resolution of an issue presented on review of an administrative decision hinges upon the interpretation of a statute, our standard of review is *de novo* with no presumption of correctness of the administrative agency's statutory interpretation. *H & R Block E. Tax Servs., Inc. v. Tenn. Dep't. of Commerce & Ins.*, 267 S.W.3d 848, 855 (Tenn. Ct. App. 2008); *Spring Hill, L.P. v. Tenn. State Bd. of Equalization*, No. M2001-02683-COA-R3-CV, 2003 WL 23099679, at *5 (Tenn. Ct. App. Dec. 31, 2003).

Tax assessments are generally presumed to be valid, and "the burden is on the taxpayer to prove that they are erroneous." *Edmondson Mgmt. Serv., Inc. v. Woods*, 603 S.W.2d 716, 717 (Tenn. 1980) (quoting *Howard v. United States*, 566 S.W.2d 521, 528 (Tenn. 1978)). However, "[t]axation statutes must be liberally construed in favor of the taxpayer and strictly construed against the taxing authority." *Covington Pike Toyota, Inc. v. Cardwell*, 829 S.W.2d 132, 135 (Tenn. 1992).

## IV. Trial Court's Findings

Taxpayers initially assert that the trial court erred by stating in its memorandum opinion that "neither side introduced any additional or supplemental evidence at the hearing" before the trial court. We agree with this contention inasmuch as the record reveals that the trial court did hear testimony from Barry Mathis, on behalf of Assessor, in addition to receiving certain exhibits during the November 2019 hearing.

Despite the trial court's erroneous statement in its memorandum opinion that no additional evidence had been introduced, however, Taxpayers have failed to demonstrate

how this minor error proved harmful. *See, e.g.*, *Gentry v. Walls*, No. 01-A-019105-CV-00190, 1991 WL 254561, at \*1 (Tenn. Ct. App. Dec. 4, 1991) ("The test for harmless error is found in Rule 36, Tenn. R. App. P., which says a judgment should not be set aside unless, considering the whole record, the error more probably than not affected the judgment."). In fact, Taxpayers concede in their appellate brief that the trial court made various findings in its memorandum opinion that appear to be based, at least in part, on the evidence presented during the November 2019 hearing. As such, we consider the trial court's erroneous statement in its memorandum opinion, quoted above, to be harmless.

## V. Standard of Review Applicable in Trial Court

Taxpayers seek a determination from this Court that the trial court applied an incorrect standard of review in this cause. The State Board and the AAC agree that an incorrect standard was applied although they further contend that this error was harmless because the trial court reached the correct result. These parties urge that the standard of judicial review outlined in the statutory scheme applicable to tax proceedings before the State Board, specifically Tennessee Code Annotated § 67-5-1511, is controlling in this matter. This statutory section provides that when reviewing a final decision of the State Board or the AAC, the chancery court should conduct a "new hearing" based on the administrative record and "additional or supplemental evidence which any party wishes to adduce relevant to any issue." Some decisions from this Court have applied this statutory section to judicial review of tax proceedings rather than the UAPA's narrower standard of review. *See Richardson v. Tenn. Assessment Appeals Comm'n*, 828 S.W.2d 403, 406 (Tenn. Ct. App. 1991); *see also Maury Cty. ex rel. Maury Reg'l Hosp. v. Tenn. State Bd. of Equalization*, 117 S.W.3d 779, 782 (Tenn. Ct. App. 2003).[3]

Notably, however, in 1999, this Court released an opinion, which was subsequently recommended for publication by our Supreme Court, specifying that the proper standard for judicial review of a decision of the AAC was provided in Tennessee Code Annotated § 4-5-322 of the UAPA. *See Willamette Indus.*, 11 S.W.3d at 147-48. Thereafter, several other decisions from this Court have clarified that the standard of review to be applied by the trial court when reviewing a final decision of the State Board or the AAC is that generally applicable to judicial review of an administrative decision under Tennessee Code Annotated § 4-5-322 of the UAPA while also incorporating Tennessee Code Annotated § 67-5-1511's provision of a "new hearing" before the trial court based on the administrative record and the introduction of "additional or supplemental evidence." *See Vanderbilt Univ. v. Tenn. State Bd. of Equalization*, No. M2014-01386-COA-R3-CV, 2015 WL 1870194, at \*5 (Tenn. Ct. App. Apr. 22, 2015);

---

[3] At the time of the *Richardson* decision, Tennessee Code Annotated § 67-5-1511(b) provided for a "*de novo* appeal to the chancery court" rather than a "new hearing in the chancery court based upon the administrative record and any additional or supplemental evidence which either party wishes to adduce relevant to any issue." *See* 828 S.W.2d 405. Tennessee Code Annotated § 67-5-1511(b) was amended in 1992 to substitute the current language. *See* 1992 Tenn. Pub. Acts, Ch. 1024, § 7 (S.B. 2501).

*Dooly*, 2013 WL 1799962, at \*4; *Am. Heritage Apartments*, 2005 WL 1996623, at \*4; *Spring Hill*, 2003 WL 23099679, at \*5.

As this Court explained in *Spring Hill*:

> Tenn. Code Ann. § 67-5-1511 provides in pertinent part:
>
> (a)    The action of the State Board of Equalization shall be final and conclusive as to all matters passed upon by the board, subject to judicial review, and taxes shall be collected upon the assessment determined and fixed by the board.
>
> (b)    The judicial review provided in subsection (a) shall consist of a new hearing in the chancery court based upon the administrative record and any additional or supplemental evidence which either party wishes to adduce relevant to any issue. . . .
>
> Although the possibility of presenting additional evidence in the trial court differentiates this type of case from most reviews of administrative decisions, judicial review of a Board of Equalization decision clearly falls under the Uniform Administrative Procedures Act ("UAPA"). *Willamette Industries, Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999). Accordingly, courts are to apply "the narrow, statutorily defined standard contained in [Tenn. Code Ann.] § 4-5-322(h) rather than the broad standard of review used in other civil appeals." *Wayne County v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988).
>
> In accordance with Tenn. Code Ann. § 4-5-322(h), a reviewing court may reverse or modify the administrative agency decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1)    In violation of constitutional or statutory provisions;
>
> (2)    In excess of the statutory authority of the agency;
>
> (3)    Made upon unlawful procedure;

       (4)      Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

       (5)      Unsupported by evidence that is both substantial and material in the light of the entire record.[4]

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

*Spring Hill*, 2003 WL 23099679, at \*4-5.  Moreover, as this Court observed in *Willamette*:

[W]e will not substitute our judgment regarding the weight of the evidence for that of the agency, even where the evidence could support a different result.  *Wayne County*, 756 S.W.2d at 279 (citing *Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977)); *Grubb v. Tennessee Civil Serv. Comm'n*, 731 S.W.2d 919, 922 (Tenn. App. 1987); *Hughes v. Board of Commissioners*, 204 Tenn. 298, 319 S.W.2d 481, 484 (1958)).  Stated another way,

> [a]n agency's factual determination should be upheld if there exists "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration."

*Wayne County*, 756 S.W.2d at 279 (quoting *Southern Ry. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984); *Sweet v. State Technical Inst.*, 617 S.W.2d 158, 161 (Tenn. App. 1981)).  As further explained in *Wayne County*,

> [t]he general rules governing judicial review of an agency's factual decisions apply with even greater force when the issues require scientific or technical proof.  Appellate courts have neither the expertise nor the resources to evaluate complex scientific issues de novo.  When very technical areas of expertise are involved, they generally defer to agency

---

[4] We note that although subsection (5) has since been amended to add an additional subpart, its wording and meaning as relevant here remain the same.

decisions, and will not substitute their judgment for that of the agency on highly technical matters.

However, the court's deference to an agency's expertise is no excuse for judicial inertia. Even in cases involving scientific or technical evidence, the "substantial and material evidence standard" in [T.C.A.] § 4-5-322(h)(5) requires a searching and careful inquiry that subjects the agency's decision to close scrutiny.

*Wayne County*, 756 S.W.2d at 280 (citations omitted).

*Willamette Indus.*, 11 S.W.3d at 147-48. *See Dooly*, 2013 WL 1799962, at *4.

Based on the above precedent, we conclude that in the case at bar the trial court applied the correct standard when performing judicial review of the AAC's final decision. Pursuant to Tennessee Code Annotated § 67-5-1511, the trial court conducted a hearing and afforded the parties the opportunity to present additional evidence. The trial court then considered that evidence, along with the administrative record, in determining whether the AAC's decision was supported by substantial and material evidence and whether it otherwise ran afoul of the requirements of Tennessee Code Annotated § 4-5-322. We therefore affirm the trial court's determination relative to the appropriate standard for its judicial review of the AAC's decision.

VI. Merits of Value Determinations

Finally, Taxpayers posit that the trial court erred by affirming the AAC's value determinations for the lots at issue, which they contend were contrary to applicable law and unsupported by substantial and material evidence. Respondents counter that the court correctly affirmed the valuation of the lots predicated on the comparable sales method. Upon our thorough review of this issue, we agree with Respondents.

Our statutory scheme concerning taxation of property provides in relevant part:

(a)    The value of all property shall be ascertained from the evidence of its sound, intrinsic and immediate value, for purposes of sale between a willing seller and a willing buyer without consideration of speculative values, and when appropriate, subject to the Agricultural, Forest and Open Space Land Act of 1976, compiled in part 10 of this chapter.

(b)    It is the legislative intent that no appraisal under this part shall be influenced by inflated values resulting from speculative purchases in

particular areas in anticipation of uncertain future real estate markets; but all property of every kind shall be appraised according to its sound, intrinsic and immediate economic value, which shall be ascertained in accordance with such official assessment manuals as may be promulgated and issued by the state division of property assessments and approved by the state board of equalization pursuant to law.

Tenn. Code Ann. § 67-5-601 (2018). In addition, Tennessee Code Annotated § 67-5-602 (2018) provides in pertinent part:

[I]n determining the value of all property of every kind, the assessor shall be guided by, and follow the instructions of, the appropriate assessment manuals issued by the division of property assessments and approved by the state board of equalization. In the preparation of the manual, the division of property assessments and the state board of equalization shall consult with the United States forest service and the state forester in establishing the guidelines to be used in determining the value of forestland.

(b)     For determining the value of real property, such manuals shall provide for consideration of the following factors:

(1)     Location;

(2)     Current use;

(3)     Whether income bearing or non-income bearing;

(4)     Zoning restrictions on use;

(5)     Legal restrictions on use;

(6)     Availability of water, electricity, gas, sewers, street lighting, and other municipal services;

(7)     Inundated wetlands;

(8)     Natural productivity of the soil, except that the value of growing crops shall not be added to the value of the land. As used in this subdivision (b)(8), "crops" includes trees; and

- 10 -

(9)  All other factors and evidence of value generally recognized by appraisers as bearing on the sound, intrinsic and immediate economic value at the time of assessment.

In this matter, the AAC and the trial court were presented with conflicting evidence concerning the values of the lots in question. The main difference in the values as found by Assessor and the values set forth by Taxpayers was the valuation methodology employed. The values established by Assessor were based upon the comparable sales method while the values assigned by Taxpayers' expert, Mr. Broome, were predicated on the discounted cash flow method. As the AAC explained in its "Second Final Decision and Order" following the September 2017 hearing:

The DCF [discounted cash flow] valuation method is a valid appraisal method where property is valued according to its future value. DCF calculates the present value of future income, by estimating future benefits and then discounting them by an appropriate rate.

The sales comparison approach is an equally valid and highly used method of valuing property for ad valorem taxing purposes. The general premise of the sale comparison approach is that like property should be valued similarly and uses comparable sales of similarly situated properties to value property.

As the trial court noted in its memorandum opinion, the base retail values assigned to the lots by Assessor and Mr. Broome were "very close" with Mr. Broome's retail values actually being slightly higher. The main difference in the values assigned by the parties, as found by the trial court, was that Mr. Broome then applied certain discounts in order to account for the "false assumption that those 32 lots would be sold on that day." Mr. Broome explained that the discounted cash flow method took into account the time necessary to sell the lots along with the maintenance and other expenses involved. As the trial court further elucidated, although Mr. Broome testified that the discounted cash flow method was not the only way to value these lots, he opined that it was the best method in this situation because multiple lots were for sale in the same subdivision. Mr. Broome ultimately valued the lots at $13,348 each.

Mr. Mathis, testifying on behalf of Assessor, disagreed, stating that he had never used the discounted cash flow method when valuing residential property and highlighting various problems that he perceived with its utilization to value the lots in question. Mr. Mathis instead utilized sales of other unimproved lots within subdivisions in West Knox County in determining what he believed to be fair market values for the lots, which ranged from $15,000 to $45,000 per lot for tax years 2012 and 2013 and, with a couple of exceptions, $45,000 each for tax year 2014. As the trial court further noted in its memorandum opinion, Mr. Mathis's values, determined by using the sales comparison

approach, were in some measure buttressed by the fact that Mr. Broome found higher retail base values for the subject lots ($47,813 each) before applying discounts. In addition, the trial court found that two of the lots had sold in December 2013 for $45,000 each, also supporting Mr. Mathis's values for tax year 2014.

In its memorandum opinion, the trial court further explained that the AAC had, in a two-one decision, chosen to adopt Assessor's values for the subject lots. As the trial court found, one commissioner voting in favor of adopting Assessor's values expressed concern regarding Taxpayers' use of the discounted cash flow method in valuing the lots, stating that although it represented a valid valuation method, its use was problematic given the facts of this case. The other commissioner who voted in favor of adopting Assessor's values articulated that he felt the bulk sale of lots to Mr. Cress in December 2011 was not a good indicator of the lots' values and that the comparable sales approach was the best valuation method even when utilizing the values of similar lots outside the subdivision. Notably, the third commissioner, deciding in favor of Taxpayers, acknowledged that the sales comparison approach was "the ideal approach to use," although stating that he felt the properties compared were not sufficiently similar.

In its written decision, the AAC concluded:

> After weighing the evidence and hearing the arguments presented by the parties, the Commission finds that the Assessor's proposed values accurately represent the fair market value of the Subject Lots. Although the Commission acknowledges the DCF method is a valid appraisal method, the Commission finds the Assessor's proposed values more persuasive. The DCF valuation method is not suitable for valuing the Subject Lots, as the practice of buying, building, and selling lots for purposes of residential development is not typically viewed as a practice with irregular income streams. Although the Commission is sympathetic to the argument of the Taxpayer[s] in light of the evolving marketplace of residential property sales, the Commission finds that the Taxpayer[s'] valuation methodology does not accurately represent the market value.

(Footnotes omitted.)

The trial court ultimately affirmed the AAC's decision, determining that "a reasonable mind could accept the Board's conclusion that the sales comparison approach is the appropriate method for valuing the property." We agree. As explained in *Willamette*, "courts typically will defer to an agency decision where the agency is acting within its area of knowledge and expertise, and this is particularly true where technical or scientific matters are involved." 11 S.W.3d at 149-150.

As in the instant case, *Willamette* involved a question concerning the appropriate valuation methodology to be utilized based on conflicting expert testimony. *See id.* The *Willamette* Court noted that "agencies are accorded 'wide discretion in determining the weight or probative value to be given the testimony of the expert witness,'" explaining that "when conflicts in expert testimony arise, it is the agency's prerogative to resolve them, not the court's." *Id.* at 149 (quoting *Wayne Cty.*, 756 S.W.2d at 281). As the Court further elucidated:

> Admittedly, the record contains evidence regarding both advantages and disadvantages of each appraisal method, as well as evidence that the residual method could, in certain instances, be the preferable means of valuation. On the other hand, it also contains credible evidence indicating that, under the circumstances of this case, the direct comparable sales method represented the appropriate choice.

11 S.W.3d at 149-50 (internal citations omitted). The *Willamette* Court proceeded to explain that inasmuch as the use of the comparable sales method satisfied the requirements of Tennessee Code Annotated § 67-5-601, it constituted an appropriate method for valuing the subject property. *Id.*

Similarly, here, the AAC was presented with conflicting expert testimony with regard to the appropriate valuation methodology to be applied to the lots in question. The AAC resolved that conflict in favor of Assessor's use of the comparable sales method, a method which satisfies the requirements of Tennessee Code Annotated § 67-5-601. *See id.* We therefore conclude that the AAC's determination, as subsequently affirmed by the trial court, that the comparable sales method constituted an appropriate method for valuing the subject real property is supported by substantial and material evidence in the record and does not otherwise violate the requirements of Tennessee Code Annotated § 4-5-322.

The trial court also determined that the facts in the record furnished "a reasonably sound basis for the Board's decision" concerning the ultimate values of the subject lots. Again, we agree with the trial court. The AAC's decision as to the values of the subject lots is supported by substantial and material evidence in the record, as outlined above. We reiterate that the AAC's factual determination should be upheld if there exists "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Willamette,* 11 S.W.3d at 147 (quoting *Wayne Cty.*, 756 S.W.2d at 279). *See Am. Heritage Apartments*, 2005 WL 1996623, at *4; *Spring Hill*, 2003 WL 23099679, at *5. Taxpayers bore the burden of proving that Assessor's values were erroneous, and they simply failed to do so in this case. *Spring Hill*, 2003 WL 23099679, at *5. We therefore affirm the trial court's judgment.

## VII. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants, Michael A. Cress and Park Place Land Holdings, LLC. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed below.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE